

FILED

May 31 2017, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Benjamin M. Blatt
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Mark D. Gerth
Michael E. Brown
Sarah A. Hurdle
Kightlinger & Gray, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lucy Mundia, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Drendall Law Office, P.C., <br> *Appellee-Defendant.* | May 31, 2017 <br><br> Court of Appeals Case No. <br> 71A05-1610-PL-2388 <br><br> Appeal from the St. Joseph Circuit Court <br><br> The Honorable David T. Ready, Judge Pro Tempore <br><br> Trial Court Cause No. <br> 71C01-1411-PL-319 |

**Pyle, Judge.**

## Statement of the Case

[1] Our Indiana Supreme Court has explained that "Indiana's distinctive summary judgment standard imposes a heavy factual burden on the movant to demonstrate the absence of any genuine issue of material fact on at least one element of the [non-movant's] claim." *Siner v. Kindred Hosp. Ltd. P'ship*, 51

N.E.3d 1184, 1187 (Ind. 2016) (citing *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014)).

[2] This case is an example of the importance of a summary judgment movant meeting its initial burden when filing a summary judgment motion, the importance of designating evidence that will assist it in negating an element of the non-movant's claim, and demonstrating the absence of any genuine issue of material fact.

[3] Lucy Mundia ("Mundia") appeals the trial court's order granting summary judgment to Drendall Law Office ("Drendall") on Mundia's legal malpractice claim. Mundia had hired Drendall to represent her in her negligence and wrongful death claims against St. Joseph County ("the County") and the City of South Bend ("the City"), which were based on acts and omissions of the South Bend Prosecutor's Office ("the Prosecutor's Office") and the South Bend Police Department ("the Police Department"). Mundia's malpractice claim stems from Drendall's failure to file a Tort Claim Notice with the County and the City within the 180-day statutory period set forth in the Indiana Tort Claims Act ("ITCA"), INDIANA CODE § 34-13-3-8. Drendall's failure to file the required notice barred Mundia's claims against these governmental entities.

[4] Drendall filed a motion for summary judgment on Mundia's legal malpractice claim. In its motion, it conceded that it had a duty to her as a client and had breached that duty by failing to file the required notice, but it argued that the failure to file the tort claim notice was not the proximate cause of her damages

for a legal malpractice claim. Specifically, Drendall argued that it did not proximately cause Mundia's damages because she would not have been able to recover at trial on her underlying negligence and wrongful death claims because the Prosecutor and the Police Department would have had immunity under the ITCA. The trial court granted summary judgment to Drendall.

Mundia argues that the trial court erred by granting summary judgment to Drendall on her legal malpractice claim because there is an issue of fact regarding proximate cause and damages. Because we agree and conclude that Drendall did not meet its initial burden of negating the elements of proximate cause and damages of Mundia's legal malpractice claim, we reverse the trial court's grant of summary judgment and remand for further proceedings.

We reverse and remand.[1]

## Issue

Whether the trial court erred by granting Drendall's motion for summary judgment.

## Facts[2]

The facts most favorable to Mundia, the non-moving party in this summary judgment, are set forth herein.

---

[1] We held oral argument on this appeal on May 17, 2017 in the Court of Appeals Courtroom. We commend the parties' counsel for their oral advocacy.

[2] We note that, contrary to Indiana Appellate Rule 50, Mundia has failed to file an Appellant's Appendix and that, contrary to Indiana Appellate Rule 46, she has failed to support her Statement of Case and

[8] According to Mundia's complaint against Drendall, on May 28, 2013, the Police Department arrested Mundia's husband, Edward Mwuara ("Mwuara"), for invasion of privacy for violating a protective order. In its report, the Police Department noted that there was a protective order for Mundia's six-year-old daughter, Shirley Mundia ("Shirley"), but failed to note that there was a protective order for Mundia. The Prosecutor's Office searched for a protective order in Mwuara's name but not in the name of Shirley or Mundia, the protected individuals.[3] Upon seeing no active protective order under Mwuara's name, the Prosecutor's Office released him from jail. Less than seventy-two hours later, Mwuara returned to Mundia's house and stabbed both Mundia and Shirley, resulting in Shirley's death and severe injuries to Mundia.

[9] On October 14, 2013, Mundia and Stephen Drendall ("Attorney Drendall") entered into a contract to have Drendall represent Mundia in her negligence and wrongful death claims against the County and the City. The contract specified that the date of the incident was June 2, 2013. Pursuant to the ITCA, Mundia was required to file her Tort Claim Notice within 180 days of the date of her loss.[4] Drendall, however, did not file the required Tort Claim Notice by

Statement of Facts with references to the record on appeal. Drendall, however, has provided our Court with an Appellee's Appendix, which is lacking a copy of the chronological case summary.

[3] At oral argument, the parties agreed that the police report contained a misspelling of Mwuara's name.

[4] The 180-day period from June 2, 2013 would have been Friday November 29, 2013. However, this day was the day after Thanksgiving. If it was a holiday in St. Joseph County, then the due date for the Tort Claim Notice would have been Monday December 2, 2013. In Drendall's motion for summary judgment, it asserted that the due date for the Tort Claim Notice was November 28, 2013. Mundia's complaint also listed the due date as November 28, 2013. Nevertheless, it is undisputed that Drendall did not file the Tort Claim Notice within the required 180-day period.

the required date. In fact, Drendall did not file a Tort Claim Notice at all. Thus, pursuant to INDIANA CODE § 34-13-3-8, Mundia's claims against the City and the County were "barred."

[10] Almost one year later, in September 2014, Mundia discovered that Drendall had not filed the Tort Claim Notice. On November 18, 2014, Mundia filed a complaint for legal malpractice against Drendall. In her complaint, she alleged that Drendall's failure to file the required Tort Claim Notice was a breach of Drendall's duty to represent her. Mundia also alleged that Drendall's breach caused her damages because she had lost the ability to bring her negligence and wrongful death claims, which she alleged would have been in excess of one million dollars. In her complaint, Mundia asserted that the Prosecutor's Office had issued a press release acknowledging that it had been negligent in performing the protective order search that freed Mwuara from jail. Mundia argued that, given the County's public admission of fault, the County would have been likely to settle her claims. Mundia attached to her complaint a copy of the following documents: (1) the contract or "Contingent Fee Agreement" between Mundia and Drendall; (2) an August 25, 2013 letter from Attorney Drendall to Mundia in which Attorney Drendall offered to represent Mundia in her claims against the City and the County and informed Mundia that were "strict time limits to bring such claims";[5] (3) an October 22, 2013 letter from

---

[5] The full body of Attorney Drendall's letter provided as follows:
    Re: claims against the government
  Dear Ms. Mundia:

Attorney Drendall to Mundia's original attorney, Elton Johnson ("Attorney Johnson"), informing Attorney Johnson that Drendall was now representing Mundia and seeking Attorney Johnson's case file; and (4) an October 31, 2013 letter from Attorney Drendall to the Prosecutor's Office, following up on Attorney Johnson's two prior records requests and seeking to obtain the records. (Drendall's App. Vol. 2 at 10, 15).

[11] Thereafter, Drendall filed its answer and admitted that Attorney Drendall had entered into a contract with Mundia and that, at the time of entering the contract, the 180-day statutory period had not passed. As a defense, Drendall alleged, in part, that Mundia's "damages [we]re caused in whole or in part" by Attorney Johnson. (Drendall's App. Vol. 2 at 19).

[12] On June 13, 2016, Drendall filed a motion for summary judgment. Drendall did not dispute the duty or breach elements of Mundia's legal malpractice claim. Instead, Drendall sought to negate the elements of proximate cause and damages. Drendall argued that it was not the proximate cause of Mundia's damages because her negligence claims were barred by the ITCA. Specifically, Drendall argued that, even if it would have timely filed the Tort Claim Notice,

---

Anthony had come to me in June to discuss claims against South Bend and St. Joseph County for their actions in releasing Edward [Mwuara] from custody. I am sorry I did not see you at the funeral home.

You should know there are strict time limits to bring such claims. I hope you have hired another lawyer and are in negotiations already. If not, please take action immediately. We would be happy to assist you in this matter.

I hope with God's help you are coming to peace with the loss of your daughter.

(Drendall's App. Vol. 2 at 15).

the Prosecutor's Office and the Police Department were immune under the ITCA. Drendall asserted that the Prosecutor's Office was immune under INDIANA CODE § 34-13-3-3(7) of the ITCA ("Subsection 7") because it had performed a discretionary function when it decided not to file charges against Mwuara. Drendall also asserted that the Police Department was immune from liability for enforcing or failing to enforce a law pursuant to INDIANA CODE § 34-13-3-3(8) ("Subsection 8").[6] As to the issues of proximately causing Mundia's damages, Drendall argued that Mundia "was not damaged by Drendall's representation because, even if Drendall had filed the notice of claim within the 180 days, the South Bend Police Department and St. Joseph County Prosecutor's Office would be immune from liability." (Drendall's App. Vol. 2 at 38). Drendall designated as evidence Mundia's complaint with attachments and excerpts from the deposition of Sally Skodinski ("Skodinski"), who was the deputy prosecutor who conducted the search of the protective order database and did not file charges against Mwuara.

---

[6] INDIANA CODE § 34-13-3-3 provides, in relevant part:

> A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following:
>
> * * * * *
>
> (7) The performance of a discretionary function; however, the provision of medical or optical care as provided in IC 34-6-2-38 shall be considered as a ministerial act.
>
> (8) The adoption and enforcement of or failure to adopt or enforce:
>   (A) a law (including rules and regulations); or
>   (B) in the case of a public school or charter school, a policy;
> unless the act of enforcement constitutes false arrest or false imprisonment.

[13]     In Skodinski's deposition, she testified that her job as a deputy prosecutor included reviewing police reports and deciding whether to charge a person. She also testified that when reviewing a police report that involved the violation of a protective order, she would search "[e]ither parties' names" in Incite, "the statewide system of looking up protective orders[,]" to "make sure that there actually was a valid" protective order. (Drendall's App. Vol. 2 at 64, 66). Additionally, she testified that there was "no written policy" on how to conduct the protective order search but that her "practice" was to verify that there was a valid protective order before making a "charging decision[.]" (Drendall's App. Vol. 2 at 65). In regard to her search for Mwuara's protective order, Skodinski testified that she searched Mwuara's name and "spelled it according to how it was on the front page of the police report." (Drendall's App. Vol. 2 at 66).[7] When "a protective order came up with his name and the alleged victim's name, and it said, 'Expired. Dismissed.'[,]" Skodinski decided not to charge Mwuara. (Drendall's App. Vol. 2 at 67). She did not do a separate search under Mundia's or Shirley's names, who were the protected individuals and alleged victims.

[14]     In Mundia's summary judgment response, she argued that the Prosecutor's Office would not have been immune under the ITCA because the Prosecutor's Office's decisions not to charge and to release Mwuara were not discretionary decisions but were, instead, based upon the office's failure to search for

---

[7] Again, at oral argument, the parties stated that the police report contained a misspelling of Mwuara's name on one part of the report.

protective orders based on the protected individuals. Mundia argued that the Prosecutor's Office's investigation, or lack thereof, was not protected by the immunity provision of the ITCA. She also argued that, based on federal law, absolute immunity could not be extended to the Prosecutor's Office's actions and failure to act that were part of an investigatory phase. In support of her argument, she cited to *Burns v. Reed*, 500 U.S. 478 (1991). Additionally, she argued that there was a genuine issue of material fact regarding whether the acts of the Prosecutor's Office, including the deputy prosecutor's failure to properly search for a restraining order, were solely discretionary, thereby making summary judgment inappropriate on her malpractice claim against Drendall. In her response, Mundia also questioned the appropriateness of Drendall's initial decision to file a negligence claim against the Police Department and stated that she "never really disputed" that the Police Department would have had immunity under the ITCA. (Drendall's App. Vol. 2 at 69).[8]

[15] The trial court held a summary judgment hearing on September 2, 2016. At the beginning of the hearing, Mundia's counsel requested a continuance because counsel had recently been "made aware" of some documents that were part of Attorney Johnson's records request to the Prosecutor's Office. (Tr. Vol. 2 at 3).[9]

---

[8] Based on the content of the Appellee's Appendix, which does <u>not</u> include a CCS, it does not appear that Mundia designated any evidence with her summary judgment response. At oral argument, Mundia's counsel confirmed that he did not file any designated evidence with Mundia's summary judgment response.

[9] According to Mundia's counsel, the documents included "two press releases" (one about the shooting of Mwuara and the other about a determination that the police officer was justified in the shooting); a "sworn statement from Mr. Dvorak about the content of those documents[;]" and a "letter from Miss Skodinski[.]" (Tr. Vol. 2 at 3, 4).

Drendall's counsel objected to Mundia's continuance request because: (1) Drendall's counsel had driven to South Bend from Indianapolis; (2) Mundia's counsel had received the documents two days prior but had just informed Drendall's counsel about them at the hearing; and (3) the deadline for Mundia to file her response to Drendall's summary judgment motion and to designate evidence had already passed. The trial court proceeded to hear the summary judgment arguments.

[16] The summary judgment hearing was not the typical summary judgment hearing with the movant, Drendall, presenting argument to meet its summary judgment burden and specifically negating an element of Mundia's claim followed by the non-movant, Mundia, presenting argument to show why there were genuine issues of fact. Indeed, Drendall did not present argument first as movant and did not present any specific argument regarding how the immunity provisions of the ITCA—Subsection 7 and Subsection 8—applied to negate the proximate cause element. Instead, the hearing proceeded with Mundia's counsel first presenting argument to dispute the application of the immunity provisions and then arguing that there were questions of fact regarding proximate cause and damages.

[17] During the hearing, Mundia argued that the Prosecutor's Office would not have immunity because Skodinski's actions were part of an investigatory stage. In so arguing, Mundia relied, as she did in her summary judgment response, on the federal case of *Burns v. Reed*, 500 U.S. 478 (1991). Additionally, she argued that Skodinski's manner of conducting the protective order database search was a

nondiscretionary function that would not have been immune. Mundia also argued that, regardless of whether the Prosecutor's Office had immunity, Drendall's failure to timely file the Tort Claim Notice had resulted in a loss of her potential to file her case and enter into settlement negotiations with the County and City. Mundia stated that Attorney Drendall's pursuit of her as a client showed that her case had some merit, in the form of a settlement opportunity, even if immunity applied. Mundia contended that there would have been settlement potential because the Prosecutor's Office's search of the protective order database was inadequate (only searching the arrestee's name) and because the Police Department's arrest report of Mwuara contained a misspelled name and did not include the protective order number for the active protective order against Mwuara.[10] Mundia asserted that the trial court should deny Drendall's summary judgment motion because the questions of proximate cause and whether there was "value" to her action were questions of fact for the jury. (Tr. Vol. 2 at 11).

[18]  Drendall conceded that Attorney Drendall had failed to file a Tort Claim Notice. It also acknowledged that the actions of the Prosecutor's Office might have been negligent but argued that it "d[id]n't really matter" because Skodinski's actions in determining whether to charge Mwuara were "absolutely discretionary." (Tr. Vol. 2 at 18, 22). Drendall also asserted that the *Burns v.*

---

[10] Despite Mundia's apparent concession in her summary judgment response regarding immunity for the Police Department, she appears to have disavowed that argument at the summary judgment hearing and argued that the Police Department would not have immunity.

*Reed* federal case was not applicable because it involved a § 1983 claim and not an Indiana tort claim.

[19] Thereafter, on September 19, 2016, the trial court entered a general order, finding that there were no disputed issues of material fact and granting Drendall's motion for summary judgment. Mundia now appeals.

# Decision

[20] Mundia argues that the trial court erred by granting summary judgment to Drendall on her claim of legal malpractice.

[21] Our standard of review for summary judgment cases is well-settled. When we review a trial court's grant of a motion for summary judgment, our standard of review is the same as it is for the trial court. *Knighten v. E. Chi. Hous. Auth.,* 45 N.E.3d 788, 791 (Ind. 2015). Summary judgment is appropriate only where the moving party has shown that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). "Indiana's distinctive summary judgment standard imposes a heavy factual burden on the movant to demonstrate the absence of any genuine issue of material fact on at least one element of the [non-movant's] claim." *Siner v. Kindred Hosp. Ltd. P'ship*, 51 N.E.3d 1184, 1187 (Ind. 2016) (citing *Hughley,* 15 N.E.3d at 1003). Unlike federal practice, in Indiana, a moving party is *not* entitled to summary judgment where it merely asserts that the opposing party lacks evidence on an element to prove its claim. *Hughley*, 15 N.E.3d at 1003. Instead, our Courts "impose a more onerous burden" and

require a moving party "to affirmatively 'negate an opponent's claim.'" *Id.* (quoting *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.,* 644 N.E.2d 118, 123 (Ind. 1994), *reh'g denied*). Only after the moving party carries its burden is the non-moving party then required to present evidence establishing the existence of a genuine issue of material fact. *Knighten*, 45 N.E.3d at 791.

[22] "In deciding whether summary judgment is proper, we consider only the evidence the parties specifically designated to the trial court." *Id.* (citing Ind. Trial Rule 56(C), (H)). Additionally, "[w]e construe all factual inferences in favor of the non-moving party and resolve all doubts regarding the existence of a material issue against the moving party." *Id.* We must carefully review a decision on summary judgment to ensure a party is not improperly denied his day in court. *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 974 (Ind. 2001). "Summary judgment is a lethal weapon and courts must be mindful of its aims and targets and beware of over-kill in its use." *Southport Little League v. Vaughan*, 734 N.E.2d 261, 269 (Ind. Ct. App. 2000), *trans. denied*. Indeed, "Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Hughley*, 15 N.E.3d at 1004.

[23] "In Indiana, an attorney is generally required 'to exercise ordinary skill and knowledge.'" *Clary v. Lite Machines Corp.*, 850 N.E.2d 423, 432 (Ind. Ct. App. 2006) (quoting *Rice v. Strunk*, 670 N.E.2d 1280, 1283-84 (Ind. 1996)). Additionally, "[a]n attorney has the duty to protect and preserve the rights . . .

of his client." *Gilman v. Hohman*, 725 N.E.2d 425, 431 (Ind. Ct. App. 2000), *trans. denied*.

[24] Here, Mundia filed her complaint against Drendall and argued that Drendall was liable to her for legal malpractice based on Drendall's failure to timely file a Tort Claim Notice. "The elements of an action for legal malpractice are: (1) employment of an attorney, which creates a duty to the client; (2) failure of the attorney to exercise ordinary skill and knowledge (breach of the duty); and (3) that such negligence was the proximate cause of (4) damage to the plaintiff." *Reiswerg v. Statom*, 926 N.E.2d 26, 30 (Ind. 2010) (internal quotation marks and citation omitted).

[25] "To obtain summary judgment in Indiana, a moving party must demonstrate the absence of any genuine issue of material fact on at least one element of the opposing party's claim." *Siner*, 51 N.E.3d at 1185-86. Because Drendall moved for summary judgment, it had the burden of "affirmatively negating" at least one element of the Mundia's legal malpractice claim. *See id.* at 1188.

[26] In *Jarboe*, our Indiana Supreme Court explained the importance of the parties' burden in a summary judgment proceeding:

> The burden imposed at trial upon the party with the burden of proof on an issue is significantly different from that required of a non-movant in an Indiana summary judgment proceeding. Under Indiana's standard, the party seeking summary judgment must demonstrate the absence of any genuine issue of fact as to a determinative issue, and only then is the non-movant required to come forward with contrary evidence.

\* \* \* \* \*

> Merely alleging that the plaintiff has failed to produce evidence on each element of [his cause of action against the defendant] is insufficient to entitle the defendant to summary judgment under Indiana law.

*Jarboe*, 644 N.E.2d at 123.

[27] Accordingly, our task on appeal is not to determine whether Mundia has proven each element of her legal malpractice claim; instead, we must determine whether Drendall has adequately met its initial burden of proving an absence of any genuine issue of material fact or of affirmatively negating at least one element with respect to Mundia's malpractice claim. *See id.*; *Siner*, 51 N.E.3d at 1188.

[28] In Mundia's malpractice complaint, she alleged that Drendall's failure to file the required Tort Claim Notice had resulted in damages of losing her ability to bring negligence and wrongful death claims and by losing her ability to settle with the County, which had apparently publicly admitted fault. On summary judgment, Drendall did not dispute that it owed a duty to Mundia or that it had breached that duty. Instead, Drendall attempted to negate the proximate cause and damages elements of Mundia's legal malpractice claim. In order for Drendall to have summary judgment granted in its favor, it was required to designate evidence demonstrating that one of these elements of Mundia's legal malpractice claim was not satisfied. *See Jarboe,* 644 N.E.2d at 123. Drendall argued that Mundia would not have been able to recover any damages in her underlying litigation because the Prosecutor's Office and the Police Department

had immunity under the ITCA—more specifically, under Subsections 7 and 8 of INDIANA CODE § 34-13-3-3, respectively. Drendall argued that, as a result, it was not the proximate cause of Mundia's harm.[11] The trial court entered a general order and granted summary judgment to Drendall, apparently on this basis.

[29] The main point of contention between the parties in this appeal is whether Drendall met its summary judgment burden of showing that it had negated an element of Mundia's legal malpractice claim. More specifically, the issue is whether Drendall affirmatively showed that its failure to file the Tort Claim Notice was not the proximate cause of Mundia's damages.[12] "One's action or omission is the proximate cause of an injury when the ultimate injury is one that was foreseen, or reasonably should have been foreseen, as the natural and probable consequence of the act or omission." *Rhodes v. Wright*, 805 N.E.2d 382, 388 (Ind. 2004) (internal quotation marks, citations, and internal brackets omitted). Proximate cause is generally a *question of fact* and left to the jury. *Id.* "Only in plain and indisputable cases, where only a single inference or conclusion can be drawn, are the questions of proximate cause and intervening

---

[11] In other words, Drendall argued that the defendants in the underlying litigation would have had an affirmative defense that would have potentially barred Mundia's claims. The assertion of immunity is an affirmative defense, and a "governmental entity seeking immunity [under the ITCA] bears the burden of proving that its conduct falls within one of the exceptions set out in the Act." *City of S. Bend v. Dollahan*, 918 N.E.2d 343, 351 (Ind. Ct. App. 2009), *trans. denied*. "We narrowly construe immunity because it provides an exception to the general rule of liability." *Id.*

[12] The parties' briefs also discuss the specific ITCA immunity provisions and whether they would provide immunity to the Prosecutor's Office and the Police Department. However, because the main argument seems to be whether there is an issue of fact regarding whether Drendall was the proximate cause of Mundia's damages even in light of any application of the immunity provisions, we will not go into detail of those arguments.

cause matters of law to be determined by the court." *Peters v. Forster*, 804 N.E.2d 736, 743 (Ind. 2004). "To establish causation and the extent of harm in a legal malpractice case, the client must show that the outcome of the underlying litigation would have been more favorable but for the attorney's negligence." *Barkal v. Gouveia & Assocs.*, 65 N.E.3d 1114, 1119 (Ind. Ct. App. 2016).

[30] Drendall argues Mundia cannot show that the outcome of her underlying litigation would have been more favorable but for Drendall's failure to timely file a Tort Claim Notice. However, as non-movant on summary judgment, that is not her burden. That would be her burden at trial. Specifically, Drendall contends that Mundia's underlying claims were "not viable under the ITCA" and that "the fact that [she] had no chance to prevail in her case is dispositive because it prevents her from proving that Drendall's conduct proximately caused her alleged loss." (Drendall's Br. 11). In so arguing, Drendall is attempting to shift the burden onto Mundia by arguing that she, on summary judgment, is required to prove the elements of proximate cause and damages. Indeed, during the summary judgment hearing, the trial court, too, seemed to place the burden onto Mundia. The trial court stated that Mundia, "as in any legal malpractice case, . . . "ha[d] to prove the case within the case" and that she "ha[d] to prove that it was a winnable case before [she] c[ould] find Mr. Drendall did something to ruin [her] chance to win." (Tr. Vol. 2 at 14). While this would be Mundia's burden at trial, it is not her burden on summary judgment.

[31] Here, Drendall, as summary judgment movant, had the burden to show that it was not the proximate cause of Mundia's damages. Drendall argues that it met its summary judgment burden, contending that Mundia's damages in this malpractice case were the loss of a monetary recovery from a trial on her underlying negligence and wrongful death claims and that application of the immunity provisions of the ITCA would have precluded recovery of such trial damages.[13]

[32] Mundia, however, contends that, even in the face of application of the immunity provisions, her damages included the possibility of settlement outside of trial, especially "given the egregious fact pattern and Drendall's own political connections[.]"[14] (Mundia's Br. 19). In other words, Mundia argues that, even if the immunity provisions applied, the outcome of the underlying litigation would have been more favorable—in that she would have had an opportunity for settlement negotiations—but for Drendall's negligence in failing to file the Tort Claim Notice. She asserts that she "might have found some monetary compensation in mediation, or at trial, or not at all, but at the very least she lost the greatest value the American legal system can provide" including "her ability

---

[13] Drendall's argument seems somewhat disingenuous given Attorney Drendall's actions of seeking out Mundia to represent her in her tort claims against these governmental entities.

[14] Drendall contends that Mundia has waived any argument that settlement opportunities were part of her damages because she did not specifically argue that in her summary judgment response. We note, however, that she raised the argument in the summary judgment hearing and that Drendall did not object to her argument during the hearing. Additionally, Mundia's complaint raised the loss of settlement as a result of Drendall's failure to file the Tort Claim Notice.

to speak for the dead . . . and to find some measure of justice and vindication for a dead 6-year old . . . ." (Mundia's Br. 16).

[33] Drendall argues that the possibility of settlement should not be considered as a part of Mundia's damages because she did not designate any specific evidence to show that the Prosecutor's Office or the Police Department would have considered settlement of her claims. Again, Drendall is attempting to shift the burden to Mundia before it has shown that its own designated evidence affirmatively negated the proximate cause and damages elements.

[34] To support its attempt to negate the proximate cause and damages elements, Drendall designated Mundia's complaint and attachments and excerpts of Skodinski's deposition. One of these attachments, however, shows that settlement could have been a possibility, or at least an option, in Mundia's underlying litigation. Indeed, in Attorney Drendall's August 2013 letter to Mundia, which was attached to the complaint, he informed her of the "strict time limits" for her to bring her claims against the City and the County and stated that she should be in "negotiations already" with them and "take action immediately." (Drendall's App. Vol. 2 at 15). The designated evidence provided by Drendall with its summary judgment motion is rather limited. Aside from excerpts from Skodinski's deposition, there are no affidavits or depositions from the parties involved in the underlying litigation. Drendall did not designate evidence to show the content of the police report, which would have been the basis of Mundia's underlying claims against the Police Department and would be necessary for Drendall's attempt to show that the

Police Department would have had immunity under the ITCA. Indeed, there are many factual details lacking regarding the underlying case and the actions of the Prosecutor's Office and the Police Department that Drendall contends were protected by immunity under the ITCA.

[35] We are mindful that, on summary judgment, we are obligated to construe the evidence in favor of the non-moving party and resolve all doubts against the moving party. *Knighten*, 45 N.E.3d at 791. Summary judgment should not be granted where material facts conflict or conflicting inferences are possible. *See Hughley*, 15 N.E.3d at 1003-04 (explaining that "summary judgment is not a summary trial"). Our reversal of the trial court's grant of summary judgment should not be construed as an opinion on the merits of Mundia's case or whether she will ultimately be able to show all the elements of her legal malpractice claim. However, because Drendall has failed to prove there are no genuine issues of fact regarding the issues of proximate cause and damages of Mundia's legal malpractice claim, we reverse the trial court's entry of summary judgment and remand for further proceedings.

[36] Reversed and remanded.

May, J., and Brown, J., concur.