

**FILED**

Dec 02 2019, 5:41 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Crystal G. Rowe
Alyssa C.B. Cochran
Kightlinger & Gray, LLP
New Albany, Indiana

Michael E. Brown
Kightlinger & Gray, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Benjamin M. Blatt
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Drendall Law Office, P.C., *Appellant-Defendant,* | December 2, 2019 |
| v. | Court of Appeals Case No. 19A-PL-582 |
| | Appeal from the St. Joseph Circuit Court |
| Lucy Mundia, *Appellee-Plaintiff,* | The Honorable John E. Broden, Judge |
| | Trial Court Cause No. 71C01-1411-PL-319 |

**Robb, Judge.**

# Case Summary and Issue

[1] Lucy Mundia sued Drendall Law Office, P.C. ("Drendall") for legal malpractice, alleging Stephen Drendall ("Attorney Drendall"), the attorney she hired to represent her in negligence and wrongful death claims against the City of South Bend ("City") and St. Joseph County ("County"), failed to timely file a tort claims notice resulting in her claims being barred and her chance to pursue a settlement being lost. Summary judgment for Drendall was reversed by this court on appeal, *see Mundia v. Drendall Law Office, P.C.*, 77 N.E.3d 846 (Ind. Ct. App. 2017), *trans. denied* ("*Mundia I*"), and the case proceeded to a jury trial. Drendall moved for judgment on the evidence after Mundia rested her case. The trial court denied the motion, and Drendall rested without presenting evidence. The jury returned a verdict in Mundia's favor in the amount of $312,000.00. Drendall then renewed its motion for judgment on the evidence. Following briefing and a hearing on the issue, the trial court again denied the motion for judgment on the evidence and entered judgment in Mundia's favor.

[2] Drendall appeals the judgment, raising the issue of whether the trial court erred in denying its motions for judgment on the evidence because Mundia's evidence that she lost the opportunity to pursue a settlement was insufficient to support the judgment in her favor. We conclude Mundia's evidence was not sufficient to prove that Drendall's failure to file a tort claim notice caused her to lose the opportunity to settle with the City and/or the County. Therefore, an essential element of her legal malpractice claim was not supported by substantial evidence, and the trial court erred in denying Drendall's motion for judgment

on the evidence and instead entering judgment for Mundia on the jury's verdict. We reverse and remand.

# Facts and Procedural History

## I. Underlying Facts and Pre-Trial Proceedings

On May 28, 2013, the City's Police Department arrested Mundia's husband, Edward Mwuara, for invasion of privacy for violating a protective order. In its report, the Police Department noted that Mundia told the officer that she had a protective order against Mwuara. The officer "checked [his] in car computer and saw there [was] a protective order for [Mundia] against [Mwuara] that [was] active." Exhibits, Volume IV, Plaintiff's Exhibit 11 at 35. The report did not note the protective order number or that there was also a protective order against Mwuara for Mundia's six-year-old daughter, Shirley Mundia.[1] Upon receiving the police report, the County Prosecutor's Office searched for a protective order in Mwuara's name but not in the name of Shirley or Mundia, the protected individuals. The search returned only one protective order and showed it was expired or dismissed. Therefore, the Prosecutor's Office declined to file charges and Mwuara was released from jail. Less than seventy-two hours

---

[1] During the summary judgment proceedings, the parties agreed that the police report also contained a misspelling of Mwuara's name. *See Mundia I*, 77 N.E.3d at 849 n.3.

later, Mwuara returned to Mundia's house and stabbed both Mundia and Shirley, resulting in Shirley's death and severe injuries to Mundia.

[4] On August 25, 2013, Attorney Drendall sent Mundia a letter noting that he met with Mundia's brother in June to discuss possible claims against the City and the County and stating, "You should know there are strict time limits to bring such claims. I hope you have hired another lawyer and are in negotiations already. If not, please take action immediately. We would be happy to assist you in this matter." Appellant's Appendix, Volume 2 at 38. Mundia initially hired Elton Johnson to represent her, but she became unhappy with Johnson's representation and on October 14, 2013, entered into a contract for Drendall to succeed Johnson in representing her in negligence and wrongful death claims against the City and the County. The contract specified that the date of the incident was June 2, 2013. Because Mundia was pursuing claims against governmental entities, the Indiana Tort Claims Act ("ITCA") required a notice of the claim to be filed with those entities within 180 days of the date of her loss. Drendall, despite taking over Mundia's case with approximately forty-five days remaining in that period, did not file the required notice by the required date. In fact, Drendall did not file a tort claim notice at all.[2] Thus, pursuant to

_____

[2] When Attorney Drendall took over as Mundia's counsel, he received a notice of lien from Mundia's former counsel stating he had done 108 hours of work on the case at a "reasonable attorney's fee of $21,600." Exhibits, Vol. IV at 21. When asked at the jury trial why he did not file a tort claim notice when he took over the case, Attorney Drendall testified, "Well, some attorney says he does $21,000 worth of work including drafting documents I thought it was a reasonable assumption that he had done the basic first thing of sending the tort claim notice." Transcript, Volume II at 47.

Indiana Code section 34-13-3-8, Mundia's claims against the City and the County were "barred."[3]

[5] In September 2014, Mundia discovered that Drendall had not filed a tort claim notice. On November 18, 2014, Mundia filed a complaint for legal malpractice against Drendall. In her complaint, she alleged that Drendall's failure to file the required notice was a breach of Drendall's duty to represent her. Mundia also alleged that Drendall's breach proximately caused her damages because she had lost the ability to bring and settle her negligence and wrongful death claims, claims which she valued at over one million dollars.[4] Mundia asserted that the Prosecutor's Office had issued a press release acknowledging that it had been negligent in performing the protective order search that freed Mwuara from jail, and she argued that, given the County's public admission of fault, it was probable the County "would have settled both claims for a significant portion of their value at trial." Appellant's App., Vol. 2 at 30.[5]

---

[3] Indiana Code section 34-13-3-8 states, "[A] claim against a political subdivision is barred unless notice is filed . . . within one hundred eighty (180) days after the loss occurs."

[4] Mundia asserted she hired Drendall to represent her in both her personal capacity and her capacity as Shirley's personal representative. Acknowledging the statutory limit on a claim against a governmental entity is $700,000, but asserting that "[g]iven the nature of the injury and wrongful death . . ., it is likely that [she] could have recovered in full on both her claim and the claim on behalf of her deceased daughter," Mundia claimed her damages were $1,398,000.00 (representing the statutory limit for two claims but "taking into account the work [Drendall] did in writing two . . . letters" that were in her file). Appellant's App., Vol. 2 at 29-30.

[5] Mundia also less clearly claimed in her complaint that the City was responsible for her injuries and Shirley's death because one of its police officers prepared an incomplete report. For the most part, however, Mundia appears to have abandoned any claim that Drendall's failure to file the tort claim notice diminished her chances of settling with the City, as her complaint itself focused on the probability the *County* would have

[6]     Drendall filed its answer and admitted that Attorney Drendall had entered into a contract with Mundia and that, at the time of entering the contract, the 180-day statutory period had not passed. Drendall then filed a motion for summary judgment, attempting to negate the proximate cause and damages elements of Mundia's legal malpractice claim. The trial court held a summary judgment hearing and entered a general order finding that there were no disputed issues of material fact and granting Drendall's motion for summary judgment.

[7]     Mundia appealed the summary judgment decision. We stated the "main point of contention" on appeal as "whether Drendall affirmatively showed that its failure to file the Tort Claim Notice was not the proximate cause of Mundia's damages." *Mundia I*, 77 N.E.3d at 854-55 (footnote omitted).

> Drendall argues Mundia cannot show that the outcome of her underlying litigation would have been more favorable but for Drendall's failure to timely file a Tort Claim Notice. However, as non-movant on summary judgment, that is not her burden. That would be her burden at trial. . . .
>
> Here, Drendall, as summary judgment movant, had the burden to show that it was not the proximate cause of Mundia's damages. Drendall argues that it met its summary judgment

---

settled her claims given its "public admissions of fault," *see* Appellant's App., Vol. 2 at 30, her response to Drendall's motion for summary judgment "questioned the appropriateness of Drendall's initial decision to file a negligence claim against the [City] and stated that she 'never really disputed' that the City would have had immunity under the ITCA[,]" *Mundia I*, 77 N.E.3d at 851, her primary argument at trial also rested on the statement issued by the Prosecutor's Office acknowledging its error in handling the case, and at the hearing on Drendall's Trial Rule 50 motion, she acknowledged "there's not much there in terms of the City's liability[,]" Tr., Vol. III at 43. Nonetheless, the City was never dismissed from the complaint and we will include the claims against the City in our discussion and decision.

burden, contending that Mundia's damages in this malpractice case were the loss of a monetary recovery from a trial on her underlying negligence and wrongful death claims and that application of the immunity provisions of the ITCA would have precluded recovery of such trial damages.

Mundia, however, contends that, even in the face of application of the immunity provisions, her damages included the possibility of settlement outside of trial, especially "given the egregious fact pattern and Drendall's own political connections[.]" In other words, Mundia argues that, even if the immunity provisions applied, the outcome of the underlying litigation would have been more favorable—in that she would have had an opportunity for settlement negotiations—but for Drendall's negligence in failing to file the Tort Claim Notice. . . .

*Id.* at 855-56 (record citations and footnote omitted). We concluded Drendall had not adequately met its initial burden of proving an absence of any genuine issue of material fact or affirmatively negating at least one element of Mundia's malpractice claim, specifically noting that the August 2013 letter from Drendall to Mundia "shows that settlement could have been a possibility, or at least an option, in Mundia's underlying litigation." *Id.* at 856.

Our reversal of the trial court's grant of summary judgment should not be construed as an opinion on the merits of Mundia's case or whether she will ultimately be able to show all the elements of her legal malpractice claim. However, because Drendall has failed to prove there are no genuine issues of fact regarding the issues of proximate cause and damages of Mundia's legal malpractice claim, we reverse the trial court's entry of summary judgment and remand for further proceedings.

*Id.* at 856-57.

## II.  Jury Trial and Post-Trial Proceedings

[8]     A jury trial commenced on November 13, 2018.  Mundia called Attorney Drendall in her case-in-chief.  Attorney Drendall conceded he had undertaken to represent Mundia before the 180-day statutory notice period had expired and that he did not file a notice of tort claim on her behalf.  Therefore, as on summary judgment, Drendall essentially conceded the elements of duty and breach.  *See* Transcript, Volume II at 48-49.  He testified that he did not have experience negotiating a case against the City or the County.  He had no particular knowledge of whether the City or County would or would not negotiate or settle a case such as this, or whether sympathy was a factor the City or County would take into consideration.  But when he took the case in October 2013, he thought negotiation "[m]ight" get something.  *Id.* at 76.

> I didn't know all of the facts underlying the incidents that happened. . . .  I didn't know then whether the immunity would cover the act that [Mundia] brought to me.
>
> And I thought that there was some chance that the City might offer something – not the City, but the County might offer some settlement notwithstanding immunity[ b]ecause I had seen the press releases where they admitted to dropping the ball in the search of the protective orders, and the release of Mr. Mwaura [sic] that lead to the death of Shirley Mundia.
>
> * * *

. . . They looked bad.  And perhaps, perhaps they would pay
something that would be a good gesture in the public relations
sector.

*Id.* at 34-35.  Attorney Drendall testified that in June of 2014, "things had been sitting for a while and [he] wasn't getting any more cooperation from Mr. Johnson[,]" *id.* at 72, so he reached out to the Prosecutor's Office "[a]bout whether we could get some settlement[,]" *id.* at 56.  It was at that time Attorney Drendall learned that the County had not received a tort claim notice in this matter and his "heart sank[.]"  *Id.* at 72.  Nonetheless, he acknowledged that whatever monetary value the case might have would be dependent upon whether or not the City and the County had immunity.

[9]     Mundia also called James Groves, who had been designated as Drendall's expert witness.  Groves is a local attorney who has knowledge of the ITCA and is a "fair expert on defending claims against municipalities[,]" having represented both the City and the County for thirty years in cases brought against them.  *Id*. at 109.  In his time defending the City and the County from negligence claims, he did not recall ever having been asked to get involved in settlement negotiations based solely on a tort claims notice.  *See id.* at 172.

[10]    Groves noted that Drendall's failure to file a tort claim notice may have breached the standard of care, but it was not the proximate cause of Mundia not getting any damages.  *Id.* at 186.  Groves testified that "as a general rule if a tort claim notice is not filed, there is never going to be any discussion of settlement."  *Id.* at 164.  However, "[i]f there is no fundamental claim to begin

with[,] the filing of a tort claim notice, or the lack of filing a tort claim notice is academic. Because the case never would have gone anywhere even had a tort claim notice been filed." *Id.* at 140. Neither the City nor the County has ever asked him to offer a settlement in a negligence case without first examining their liability, *id.* at 142,[6] and he was certain that "where there are immunity defenses [the City and the County] aren't even going to broach the subject or discuss settlement until the outcome of a motion for summary judgment[,]" *id.* at 144. Groves differentiated between a governmental immunity case in which a tort claim notice was filed and a case in which one was not: in the first case, he would file a summary judgment motion directed to the merits of the claim and the government's defenses; in the latter case, he would file a motion to dismiss or summary judgment based "solely upon they didn't do the prerequisite under the [ITCA] by giving a notice of claim" and the merits of the claim would likely never be reached. *Id.* at 146.

[11] It was Groves' opinion that even if a tort claim notice and ensuing lawsuit had been filed in Mundia's case, summary judgment would have been granted to the City and the County based on immunity and Mundia would never have received a settlement offer and would never have received any money. *Id.* at 185-86; *see also id.* at 183 (when asked what his experience is with the City or

---

[6] Groves did acknowledge he is not the only attorney employed by the City or the County to defend against cases like this, however. The City and the County send cases to attorneys "[b]ased upon what they perceive the case to deal with, and what that particular lawyer's skills are." *Id.* at 142-43. No other attorneys used by the City or the County to defend tort claims were called as witnesses.

the County making payment on a case when summary judgment has been granted on the basis of immunity, Groves responded, "They don't."). With regard to the specific claims, Mundia asked Groves whether the testimony of the officer who arrested Mwuara and prepared the police report that he had no discretion over whether to make the police report raised at least a question as to whether the City was immune. Groves answered that although making the police report is nondiscretionary by police department policy, "[w]hat he puts in, or fails to put in the report, is discretionary." *Id.* at 115. But "[i]f a notice of claim was not filed within [180 days] then you don't even look at the immunity issue [because] technically the claim is barred[ r]egardless of whether there was immunity or not." *Id.* at 117. Even if a tort claim notice had been filed, it was Groves' opinion that any lawsuit filed against the City would not have succeeded "on the basis of Mrs. Mundia, your claim against the City does not have legal merit because the City had immunity for this circumstance." *Id.* at 160. As for the County, Groves noted that a prosecutor has total discretion as to whether to file criminal charges, and if he had been retained by the County to defend Mundia's claim, he would expect the same result as for the City: her claim would not succeed based upon immunity.

[12]     Under questioning by Mundia's counsel, Groves testified:

> Q: When you act as defense counsel in these types of claims for [the County], does the County ever agree to settle claims on the basis of public opinion?
> A: Not in my experience.
> Q: In this situation . . ., do you think the County would be open to any sort of settlement if the claim had been filed just because

of the publicity?

A:  Now, I'm not sure I can answer that question.  Because a lot of it depends on who's in office, and what their attitude is at that particular time.

Q:  So there is no fixed policy?

A:  But in my experience there have been tragic situations where I thought it would be nice to try to take care of these people.  But you have to remember you're dealing with public funds.  . . . You can't just willy-nilly start making a unilateral decision that you're going to spend public funds to take care of a problem in which there is no remedy. . . .

Q:  But would you say that it's an absolute bar that there would be no settlement, or there would be a slim chance that settlement might be possible?

A:  I can't – I don't know.

* * *

Q:  [I]s there a possibility, or is it an absolute that there will never be a settlement?

A:  I'm not – I'm not going to say never, never or ever, ever.  Anything is possible.

* * *

Q:  So the possibility of settlement is never absolutely barred, is that correct?

A:  That's correct.

*Id.* at 121-23; 190-91.

[13]    Of note, Mundia called Michael Dvorak, the County prosecutor at the time of this incident.  On June 5, 2013, the Prosecutor's Office issued a public statement regarding its review of the decision not to prosecute Mwuara, concluding that Mwuara should have been charged with violation of a protective order and that the deputy prosecuting attorney "failed to exercise the thoroughness expected, particularly in crimes with women and children as

victims of domestic abuse." Exhibits, Vol. IV at 8. Neither party asked Dvorak if, during his time in office, the Prosecutor's Office had ever or would ever settle a negligence case in which the County had immunity based on the egregiousness of the error.

[14] Finally, Mundia herself testified, noting that Attorney Drendall told her that he thought he could get a settlement from the government. Tr., Vol. II at 202. She expressed her anguish and frustration at the loss of her daughter, stating, "I wish I died on that day. . . . It's been five years. And every day it's just like it's last night, like it just happened." *Id.* at 207. She pursued this case against Drendall because she believed she had lost something of value "by not being able to face the County, and the City in this situation[.]" *Id.* at 205. Attorney Drendall said "he's going to help us. And we waited and . . . realized that all [was] not well" with the case in Drendall's hands. *Id.*

[15] At the conclusion of Mundia's evidence, Drendall moved for judgment on the evidence, claiming Mundia had not presented evidence that a settlement would have been offered to her and would have been achieved despite the City's and the County's immunity and therefore, she had failed to prove her case. *Id.* at 213. Mundia countered by pointing to Attorney Drendall's testimony that "he thought there was a value there to a settlement" and Mr. Grove's testimony "that he could not say it was impossible that a settlement would have been offered." *Id*. at 221. The trial court noted that the City and the County had immunity from a claim such as this. But pointing to Attorney Drendall's "very candid" testimony that he believed when he took the case that there was some

chance the County might offer something for public relations reasons and Groves' "grudging[]" testimony that he could "never say never" as to the possibility of a settlement, the trial court stated,

> I do think that there is some evidence that the case had some settlement value. I admit it's a greatly discounted settlement value because I think, quite candidly, the City and the County are holding a lot of cards in the litigation scenario. . . . There is evidence submitted in the record as part of plaintiff's case in chief that the case had potentially some settlement value notwithstanding the immunity.

*Id.* at 228-29. Accordingly, the trial court denied Drendall's motion. Drendall rested without presenting any evidence.

[16] During discussions between the trial court and counsel settling the jury instructions, the trial court stated, "[T]here's clearly going to be an instruction that says that there is immunity for the County, and for the City in the case." *Id.* at 229. Mundia did not object. The trial court drafted its own instruction regarding immunity because there was no applicable pattern instruction. The record does not show that Mundia objected to the substance of the instruction. During closing arguments, Mundia's counsel stated, "The Court will shortly instruct you that as a matter of law, the City of South Bend and St. Joseph County had immunity [from] civil liability for the negligent acts of their employees in this matter." *Id.* at 245-46. And indeed, the trial court did instruct the jury that at all relevant times, Indiana Code chapter 34-13-3 was in full force and effect and pursuant to that chapter, the court had "found as a

matter of law and now so instruct[s] you that both the [City] and the [County] possessed legal immunity for their actions or failure to act in this case. Therefore, those governmental entities were not liable to [Mundia] for any injuries she may have suffered." Appellant's App., Vol. 2 at 128 (Jury Instruction No. 16). The trial court also instructed the jury, in part, as follows:

> The Plaintiff, Lucy Mundia, sued Drendall Law Office, PC, the Defendant.
> Plaintiff claims the Defendant committed legal malpractice in the handling of Plaintiff's case causing her financial damage and harm. Specifically, Plaintiff contends that Defendant's failure to file a timely Notice of Tort Claim prevented Plaintiff from seeking a settlement despite legal immunity for the governmental entities.
> Plaintiff must prove her claims by the greater weight of the evidence. Defendant denies Plaintiff's claims. Defendant claims that [the County] and [the City] possessed legal immunity for their actions or failure to act. Therefore, Defendant claims his failure to file a Notice of Tort Claim did not damage the Plaintiff. Defendant is not required to disprove Plaintiff's claims.

*Id.* at 120 (Jury Instruction No. 8). The jury returned a verdict for Mundia in amount of $312,000. *See id.* at 68. Drendall then renewed his motion for judgment on the evidence. *See id*. The trial court withheld entry of judgment, directed the parties to file briefs on the issue, and set the matter for hearing.

[17] At the hearing, Drendall noted that the Court of Appeals opinion in *Mundia I* held that Mundia was entitled to the opportunity to present evidence on the issues of proximate cause and damages at a trial but that it would be her burden to show that the outcome of her underlying case would have been more

favorable but for Drendall's failure to timely file a tort claim notice. Drendall's position was that Mundia had failed to present any evidence to support her burden. First, she failed to present evidence that had Drendall timely filed a notice of tort claim, the City and the County would have entered into negotiations with her and paid her a settlement even though they were not liable to her, thus failing to present any evidence of proximate cause. And second, she failed to present any evidence supporting a damages amount, thus requiring the jury to speculate in reaching its verdict.

[18]   Mundia pointed to the Prosecutor's Office's press release acknowledging its error, Groves' testimony that he was only one of several attorneys who represented the City and the County and that it was not possible to say a settlement would *never* be offered, and Drendall's testimony that he thought a settlement was possible under the unique facts of this case as evidence sufficiently supporting the jury's determination of proximate cause. She again acknowledged that the trial court had found the City and the County were immune and had so instructed the jury and that the jury's verdict was a result of the trial court's instruction that any damages amount should be discounted based on immunity.[7]

---

[7] At this hearing, Mundia claimed she had up to four claims worth up to $2,800,000 (two claims against the City, two claims against the County, each capped at $700,000) despite only asking for half that in her complaint based on two claims against the County. *See* Appellant's App., Vol. 2 at 30 (the prayer for relief asking the court to "grant [Mundia] damages in the amount of $1,398,000.00").

[19]    The trial court took the matter under advisement, and on March 4, 2019, issued an order that reads, in pertinent part:

> 8. The Indiana Court of Appeals remanded this case to the trial court for a trial. . . . [Drendall] is correct that at no time did the Court of Appeals indicate that [Mundia] would prevail in proving the elements of her legal malpractice claim, but only that she was entitled to a trial where she would then have the opportunity to prove the elements of her claim. Thus, from the moment the trial in this cause commenced, the Court's ears were acutely listening to any evidence presented in regard to the potential settlement value of [Mundia's] case. Very early on in the trial, [Mundia] called [Attorney] Drendall as a witness . . . . In response to questions from [Mundia's] counsel, the Court heard [Attorney] Drendall testify that [he thought there was a chance the County might offer a settlement because they looked bad and would pay something as a good public relations gesture].
>
> 9. [Drendall] asks this Court to disregard [Attorney] Drendall's testimony. At [the hearing], [Drendall's] counsel stated that Mr. Groves is the designated expert in this case, not [Attorney] Drendall. Further, [Drendall] argues that [Attorney] Drendall's testimony needs to be framed in the context that he qualified his answers by indicating that he "thought" the County might settle or that there was some chance the County might settle. Groves, on the other hand, was definitive in his answer stating that no governmental entity would settle a case when it so clearly possessed legal immunity.
>
> 10. However, the Court cannot simply disregard or ignore the testimony of [Attorney] Drendall. Based on the foundation that preceded Mr. Groves' testimony, he possessed far more experience in this area of the law than did [Attorney] Drendall. However, the jury chose to accept [Attorney] Drendall's testimony that the case had some settlement value. The Court

cannot simply supplant the jury's decision as to which witnesses to believe.  That is the province of the jury. . . .

Appealed Order at 5-6.  The trial court therefore denied Drendall's motion for judgment on the evidence and entered judgment in favor of Mundia in the amount awarded by the jury.  Drendall now appeals.

# Discussion and Decision[8]

## I.  Standard of Review

### A.  Judgment on the Evidence

[20]  Indiana Trial Rule 50(A) provides:

> Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict.

The purpose of a motion for judgment on the evidence is to test the sufficiency of the evidence presented by the nonmovant.  *Overshiner v. Hendricks Reg'l Health*, 119 N.E.3d 1124, 1131 (Ind. Ct. App. 2019), *trans. denied*.  A motion for judgment on the evidence should be granted "only when there is a complete

---

[8] We heard oral argument on this case in the Indiana Court of Appeals courtroom on October 23, 2019.  We thank counsel for their informative and helpful oral presentations.

failure of proof because there is no substantial evidence or reasonable inference supporting an essential element of the claim." *Stewart v. Alunday*, 53 N.E.3d 562, 568 (Ind. Ct. App. 2016) (quoting *Raess v. Doescher*, 883 N.E.2d 790, 793 (Ind. 2008)). Likewise, judgment on the evidence is proper if the inference intended to be proven by the evidence cannot logically be drawn from the evidence without undue speculation. *Hill v. Rhinehart*, 45 N.E.3d 427, 435 (Ind. Ct. App. 2015), *trans. denied*. But if there is evidence that would allow reasonable people to differ as to the result, then judgment on the evidence is improper. *Stewart*, 53 N.E.3d at 568.

[21] Our supreme court has noted that a judgment on the evidence "does not alter the critical, invaluable, and constitutionally protected role of the jury in Indiana's system of jurisprudence." *Purcell v. Old Nat'l Bank*, 972 N.E.2d 835, 842 (Ind. 2012). A trial court is not free to engage in weighing evidence or judging the credibility of witnesses to grant judgment on the evidence in a case where reasonable people may come to competing conclusions, as weighing evidence and judging witness credibility has always been within the purview of the jury. *Id.* "That said, it is equally true that judges, at times, may play a role in the ultimate determination of cases . . . to ensure the proper administration of our laws . . . . Where . . . the plaintiff fails to present sufficient, probative evidence as to a necessary element of a claim, the trial judge is within his or her discretion to issue judgment on the evidence pursuant to Rule 50(A)." *Id.*

[22] Thus, the grant or denial of a Trial Rule 50 motion is within the broad discretion of the trial court and will be reversed only for an abuse of discretion.

*Hill*, 45 N.E.3d at 435.  When we review a trial court's ruling on such a motion, we use the same standard as the trial court:  we must consider only the evidence and reasonable inferences most favorable to the non-moving party.  *Stewart*, 53 N.E.3d at 568.  When, as in this case, the trial court denies the motion and declines to intervene, "it is not the province of this Court to do so unless the verdict is wholly unwarranted under the law and the evidence."  *Ohio Farmers Ins. Co. v. Indiana Drywall & Acoustics, Inc.*, 970 N.E.2d 674, 685 (Ind. Ct. App. 2012), *trans. denied*.

## B.  Legal Malpractice

[23]  To prevail on a legal malpractice claim, the plaintiff must prove:  1) employment of the attorney and/or firm (duty); 2) failure of the attorney and/or firm to exercise ordinary skill and knowledge (breach); 3) proximate cause (causation); and 4) loss to the plaintiff (damages).  *Gates v. O'Connor*, 111 N.E.3d 215, 223-24 (Ind. Ct. App. 2018), *trans. denied*.  Duty and breach are settled in this case.  Drendall conceded that he had a duty to Mundia arising from the representation agreement and that he breached that duty by failing to file a tort claim notice within the required time frame to preserve her right to proceed in court.  Therefore, only proximate cause and damages are at issue.

[24]  In *Roumbos v. Vazanellis*, 95 N.E.3d 63, 65 (Ind. 2018), our supreme court reiterated that the "trial within a trial" doctrine governs claims of legal malpractice.  Under this doctrine, to prove proximate cause, a plaintiff alleging malpractice must show that the outcome of the underlying litigation *would have*

been more favorable had the lawyer not been negligent. *Id.* at 65-66; *see Devereux v. Love*, 30 N.E.3d 754, 763 (Ind. Ct. App. 2015) ("Proximate cause requires that there be a reasonable connection between the defendant's allegedly negligent conduct and the plaintiff's damages."), *trans. denied*. Here, the underlying litigation would have been negligence and wrongful death claims against the City and the County. But because the City and the County are governmental entities, before Mundia could have sued them in court, she was required to give them notice of her claims within 180 days of her loss. Ind. Code § 34-13-3-8(a). Failing to give the required notice entitles the governmental entity to a dismissal. *Stone v. Wright*, 133 N.E.3d 210, 217 (Ind. Ct. App. 2019). Governmental entities are generally subject to liability for tortious conduct but the legislature has granted them immunity for losses resulting from certain acts, including the performance of a discretionary function or the failure to enforce a law. Ind. Code § 34-13-3-3(7), (8). Therefore, even if a timely notice of tort claim had been filed, Mundia's claim was subject to an immunity defense. If the City and the County proved that their conduct fell within one of the exceptions to liability set out in the ITCA, then they would not be liable for the acts complained of. *See Peavler v. Bd. of Comm'rs of Monroe Cty.*, 528 N.E.2d 40, 46 (Ind. 1988) (stating the burden of proving immunity is on the governmental entity seeking its benefit). The trial court determined as a matter of law that the City and the County *did* have immunity for their acts in this case. *See Birge v. Town of Linden*, 57 N.E.3d 839, 843-44 (Ind. Ct. App. 2016) (stating the determination of whether an act falls within a category of immunity is a question of law for the court's

determination). Mundia conceded as much when she did not object to the trial court instructing the jury that the City and the County had immunity. By doing so, she also conceded that she would have recovered no damages at a trial. Her claim against Drendall was premised on his suggestion that despite immunity, the City and/or the County might offer her a settlement based upon their admitted errors causing her serious harm.

[25] Therefore, to prevail on the proximate cause element of her legal malpractice claim, Mundia must have presented sufficient evidence that she *would have* recovered damages via settlement with the City and/or the County if Drendall had timely filed a notice of tort claim on her behalf despite the City and the County having immunity. Proximate cause is primarily a question of fact for the jury, but it can be decided as a matter of law if the relevant facts are undisputed and lead to only a single inference or conclusion. *Gates*, 111 N.E.3d at 224.

## II. Evidence of Proximate Cause

[26] By its express language, Rule 50 acknowledges that a party must do more than simply present *some* evidence in support of her claim; in addition, that evidence must also be *sufficient* evidence. *Purcell*, 972 N.E.2d at 841; *see* Ind. Trial Rule 50(A) (stating the trial court may enter judgment on the evidence "[w]here all or some of the issues in a case tried before a jury . . . are not supported by *sufficient evidence*") (emphasis added). Unlike a motion for summary judgment under Indiana Trial Rule 56, the sufficiency test of Indiana Trial Rule 50(A) is

not merely whether a conflict of evidence may exist, but rather whether there exists probative evidence, substantial enough to create a reasonable inference that the nonmovant has met his burden of proof. *Purcell*, 972 N.E.2d at 841.

[27] Our supreme court has stated that determining whether evidence was sufficient to defeat a motion for judgment on the evidence requires both a quantitative and a qualitative analysis. *Id.* at 840. Specifically, the court explained,

> Evidence fails quantitatively only if it is wholly absent; that is, only if there is no evidence to support the conclusion. If some evidence exists, a court must then proceed to the qualitative analysis to determine whether the evidence is substantial enough to support a reasonable inference in favor of the non-moving party.
>
> Qualitatively, . . . [evidence] fails when it cannot be said, with reason, that the intended inference may logically be drawn therefrom; and this may occur either because of an absence of credibility of a witness or because the intended inference may not be drawn therefrom without undue speculation. The use of such words as "substantial" and "probative" are useful in determining whether evidence is sufficient under the qualitative analysis. Ultimately, the sufficiency analysis comes down to one word: "reasonable."

 *Id*. (citations and some quotation marks omitted).

[28] Drendall argues that Mundia did not present sufficient evidence, either quantitatively or qualitatively, that her case had a settlement value that was lost

by Drendall's failure to timely file a tort claim notice on her behalf, nor did she present sufficient evidence of what that settlement value would have been.[9]

## A.  Quantitative Evidence

The conclusion Mundia wanted the jury to reach was that it was more likely than not that she would have received a settlement from the City or the County had Drendall filed a timely notice of tort claim.  Her evidence fails the quantitative test only if there is *no* evidence to support this conclusion.  *See Purcell*, 972 N.E.2d at 840.  Drendall argues Mundia presented "no direct or circumstantial evidence that the City and/or County had offered, or were planning to offer, a settlement despite their immunities[,]" and contends she therefore has failed to provide *any* evidence that Drendall's breach caused her to lose the opportunity to settle.  Brief of Appellant at 31.

The evidence Mundia presented included her own testimony that Attorney Drendall told her he thought she could get a settlement; Attorney Drendall's testimony that, based on the statement by the Prosecutor's Office

---

[9] Drendall first claims that Mundia's burden at trial was to prove that a case against the City and/or the County was "winnable," relying on language used by the trial court and quoted by this court in *Mundia I*.  *See* 77 N.E.3d at 855 (quoting the trial court saying Mundia had to prove that the case underlying the legal malpractice case was winnable and then stating, "[w]hile this would be Mundia's burden at trial, it is not her burden on summary judgment").  Because it is undisputed that both the City and the County were statutorily immune from liability, Drendall argues that Mundia's claims against the City and the County were not "winnable" and therefore, her claim against Drendall for failing to procure a "win" fails as a matter of law.  But Mundia never claimed she could outright win a case against the City or the County.  The appropriate standard, as stated above, is that the outcome of the litigation would have been more favorable absent the attorney's negligence and in this case, a settlement would have been a more favorable outcome than receiving nothing.

acknowledging it erred in handling Mwuara's arrest, he thought there was "some chance" the County "might offer some settlement" because they "looked bad[,]" Tr., Vol. II at 35; Groves' testimony that if a tort claim notice is not filed, "there is never going to be any discussion of settlement[,]" *id.* at 164; and Groves' concession that "the possibility of settlement is never absolutely barred," *id.* at 190-91.  We agree with Mundia that she did present *some* evidence supporting her desired conclusion that Drendall's failure to file the tort claim notice proximately caused the loss of opportunity to settle.  There was evidence that without a tort claim notice, the City and the County would *never* discuss settlement; Attorney Drendall thought when he undertook to represent Mundia that there was a possibility for settlement; and the only City/County attorney who testified conceded he could not say the City or the County had never or would never settle a claim for which they had immunity although they had not done so in cases he handled for them.  This is some evidence supporting Mundia's assertion that had Drendall filed a tort claim notice, the City and/or the County might have entertained a settlement.

## B. Qualitative Evidence

[31]     We proceed then to the qualitative analysis to determine whether the evidence Mundia presented is substantial enough to support a reasonable inference in her favor.  *See Purcell*, 972 N.E.2d at 840.  The crux of the qualitative analysis under Trial Rule 50(A) is whether the inference that the plaintiff's allegations are true may be drawn from the evidence presented without undue speculation.  *Id.* at 841.

[32] Proof of proximate cause requires evidence of a reasonable connection between the defendant's conduct and the plaintiff's damages. *Clary v. Lite Machines Corp.*, 850 N.E.2d 423, 430 (Ind. Ct. App. 2006). "When the issue of [proximate] cause is not within the understanding of a lay person, testimony of an expert witness on the issue is necessary." *Singh v. Lyday*, 889 N.E.2d 342, 357 (Ind. Ct. App. 2008), *trans. denied*. Drendall contends, and we agree, that expert testimony was required here because the issue of "whether an immune governmental entity would have paid taxpayer money to settle Mundia's claim had a tort claim notice been timely filed" is not within the understanding of a layperson. Br. of Appellant at 31. The only expert testimony, given by Groves, was that Drendall's breach was not the proximate cause of Mundia's damages because neither the City nor the County would have paid to settle a claim when they were statutorily immune whether or not a tort claim notice had been filed. In denying Drendall's motion for judgment on the evidence, the trial court acknowledged that Groves "possessed far more experience in this area" than Attorney Drendall and he "definitive[ly]" stated no governmental entity would settle a case when it "so clearly" possessed immunity. Appealed Order at 6. The trial court nonetheless deferred to the jury's decision to believe Attorney Drendall's testimony "that the case had some settlement value." *Id.* However, Attorney Drendall did not testify that the case *had* settlement value; he testified that he *thought* the case *might* have settlement value before he had all the facts about the case. *See* Tr., Vol. II at 76.

[33] At the close of Mundia's case-in-chief, then, the expert testimony showed Drendall was not the proximate cause of Mundia's damages and she had presented no evidence showing that the City or the County had ever or would ever settle a case in which it had immunity. The Prosecutor's Office accepted responsibility for the circumstances that led to Mwuara's immediate release from jail, and yet it never reached out to Mundia to broach the subject of compensating her for their error. Groves testified he was but one attorney used by the City and the County for tort claims and yet no other attorneys who did work for the City or the County were called to testify to their experiences with settlement in immunity cases. Groves also testified that expenditure of public funds to settle cases would be a matter of public record, *id.* at 184-85, and yet Mundia presented no evidence of the City or the County ever using funds in such a way. The only evidence that supported a chance of a settlement was generalized and ambiguous – Drendall admitting he had no particular knowledge when it came to negotiating with a governmental entity but thinking the government "might" offer a settlement under the circumstances of this case and Groves "grudgingly" admitting he could never say the City or the County would never settle under these circumstances. *Id.* at 228-29. The intended inference that Mundia *would have* received a settlement if Drendall had filed a tort claim notice could not logically be drawn from this testimony without undue speculation on the part of the jury.

[34] Attorney Drendall acknowledged the value of this case depended on whether or not the City and the County had immunity. *See id.* at 77. And in that regard,

Groves opined, the trial court found as a matter of law, and importantly, Mundia's counsel conceded, that the City and the County both had immunity for the acts on which Mundia's claims against them would have been based. Had Mundia not conceded the issue of immunity, she could have argued that immunity was an open question and Drendall's failure to file the tort claim notice foreclosed her opportunity to argue immunity to a court, which in turn might have encouraged the City or the County to settle on the chance the court found their actions were not entitled to immunity. But once she conceded immunity, her only argument for a possibility of settlement was essentially that the City and the County would offer a settlement gratuitously. And Groves' testimony refuted that would ever happen.

[35]     Mundia's burden was to present sufficient evidence to show it was *more probable than not* that she *would have* achieved a better result if Drendall had filed the tort claim notice. *See Roumbos*, 95 N.E.3d at 65-66. Although Mundia's evidence suggests the *possibility* of a settlement was not completely foreclosed, there was no substantial evidence or reasonable inference from the evidence that it was *probable* she would have obtained a settlement under these circumstances. In other words, Mundia's evidence may have proved that she *could* have gotten a settlement, but it did not prove that she *would* have. We therefore agree with Drendall that Mundia's evidence of proximate cause fails the qualitative test. *See Court View Centre, L.L.C. v. Witt*, 753 N.E.2d 75, 81 (Ind. Ct. App. 2001) ("If evidence fails to create a reasonable inference of an ultimate fact, but merely leaves the possibility of its existence open for surmise, conjecture or

speculation, then there is no evidence of probative value as to that ultimate fact and a Trial Rule 50 motion should be granted.").[10]

[36] Although the facts of this case are undeniably tragic and Mundia has unquestionably suffered harm, the law and the evidence in this case do not support her claim for relief. Mundia has failed to present sufficient, probative evidence on a necessary element of her legal malpractice claim, and therefore the jury's verdict in her favor "is wholly unwarranted[.]" *Ohio Farmers Ins. Co.*, 970 N.E.2d at 685. Accordingly, the trial court abused its discretion in denying Drendall's Trial Rule 50(A) motion for judgment on the evidence.

# Conclusion

[37] Viewing Mundia's evidence and the reasonable inferences therefrom in the light most favorable to her as the non-moving party, we conclude the jury's verdict was clearly erroneous because Mundia did not present substantial evidence supporting the proximate cause element of her claim for legal malpractice. The trial court abused its discretion in denying Drendall's motion for judgment on the evidence. We therefore reverse and remand for the trial court to vacate the jury verdict and enter judgment for Drendall.

---

[10] Because we have held there was not sufficient evidence on the issue of proximate cause, Mundia's claim for legal malpractice fails, and we need not address the issue of whether she presented sufficient evidence on the issue of damages.

[38] Reversed and remanded.

Brown, J., and Pyle, J., concur.