

FILED

Apr 28 2016, 8:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John P. Young
Young & Young
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Daniel R. Fagan
Karl L. Mulvaney
Nana Quay-Smith
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Susan Stewart, Personal
Representative of the Estate of
Joanne Hatton, deceased,

*Appellant-Plaintiff,*

v.

Arthur Alunday, M.D.,

*Appellee-Defendant.*

April 28, 2016

Court of Appeals Case No.
16A04-1507-CT-760

Appeal from the Decatur Superior
Court

The Honorable Matthew D.
Bailey, Judge

Trial Court Cause No.
16D01-1206-CT-334

**Vaidik, Chief Judge.**

# Case Summary

[1] In this medical-malpractice case, the plaintiff filed a motion for judgment on the evidence claiming that Dr. Arthur Alunday, M.D., made a judicial admission during his testimony that he breached the standard of care, thereby leaving only the issues of causation and damages for the jury. Although the trial court found that Dr. Alunday judicially admitted that he breached the standard of care, the court concluded that the judicial admission was not conclusive and binding but rather should be considered and weighed as other evidence. We clarify that, contrary to a line of authority that has developed in this Court, judicial admissions—as opposed to evidentiary admissions, which can be accepted or rejected by the trier of fact—are conclusive and binding on the trier of fact. Nevertheless, considering Dr. Alunday's trial testimony as a whole, we find that he did not unequivocally admit that he breached the standard of care. We affirm the jury's verdict in his favor.

# Facts and Procedural History

[2] Dr. Alunday is an internist in Greensburg with over twenty years of experience, including treating infectious diseases. In March 2008, Joanne Hatton—who was eighty-five-years old with osteoporosis and scoliosis—was living in a nursing home in Greensburg; Dr. Alunday was her doctor. On March 10, Hatton was admitted to Decatur County Memorial Hospital ("the hospital") in Greensburg with flu-like symptoms. Hatton received intravenous fluids to

prevent dehydration. She was discharged on March 14 and returned to the nursing home.

[3] The next day, March 15, the nursing home called Dr. Alunday to tell him that the area where the IV had been inserted into Hatton's arm was red and tender. Suspecting it was a skin infection, Dr. Alunday ordered a blood culture and gave Hatton a shot of the antibiotic Rocephin.

[4] On March 16, Hatton went to the emergency room complaining of left hip and back pain. X-rays did not show any fractures, so Hatton returned to the nursing home.

[5] Hatton's preliminary blood-culture results came back on Sunday, March 17; they showed that Hatton had a Staphylococcus (staph) infection. Dr. Alunday's partner was on call that day and admitted Hatton to the hospital, where she began receiving intravenous cefazolin, another antibiotic.

[6] Dr. Alunday resumed Hatton's care on Monday. That morning, additional blood-culture results showed that Hatton's staph infection was methicillin-resistant Staphylococcus aureus (MRSA)[1] and that the infection was sensitive to the antibiotic vancomycin. Dr. Alunday immediately started Hatton on intravenous vancomycin, which was later delivered through a PICC

---

[1] MRSA is a staph germ that does not respond to the type of antibiotics that usually cure staph infections. MedlinePlus, *MRSA*, available at https://www.nlm.nih.gov/medlineplus/ency/article/007261.htm (last visited Apr. 5, 2016).

(peripherally inserted central catheter) line. Dr. Alunday planned to keep Hatton on vancomycin for four weeks, which was the standard course of treatment for MRSA blood infections.[2] Hatton stabilized, and on March 22 she was transferred from an acute-care bed to a "swing bed" in the hospital. Tr. p. 46.

[7] On March 26, eight days after starting vancomycin, Hatton complained of "worsening low back pain." *Id.* This pain was worse than the chronic back pain that she was taking narcotics for. Because Hatton's bones were weakened and she had been in a hospital bed since March 17, Dr. Alunday suspected that Hatton had a spinal-compression fracture. And because 40% of eighty-year-olds with osteoporosis have spinal-compression fractures, this was the "first thing" that entered his mind. *Id.* at 47. Accordingly, Dr. Alunday ordered an MRI to find out the cause of Hatton's back pain.

[8] Hatton underwent an MRI on March 27, and it showed scoliosis and extensive degenerative changes but no spinal-compression fracture. It also did not show any infection. Dr. Alunday performed a physical examination and did not observe any of the typical signs that MRSA had spread, or "seeded," to Hatton's back. After completing the examination, Dr. Alunday discharged Hatton from the hospital to continue her four-week course of vancomycin at the

---

[2] In fact, the record shows that Hatton received vancomycin for thirty-one days. *See* Tr. p. 205.

nursing home.  Dr. Alunday visited Hatton at the nursing home on April 3 and performed a short examination.

[9]     In the meantime, Dr. Alunday referred Hatton to Dr. Edward Negovetich, a physiatrist, to determine how to manage her back pain.  Dr. Negovetich ordered a bone scan of Hatton's spine.  The bone scan, which was performed on April 8, showed evidence of an acute L2 compression fracture.  Dr. Negovetich then referred Hatton to Dr. Andrew Trobridge, a pain-management specialist, for a possible kyphoplasty, and Hatton saw Dr. Trobridge on April 11.[3]

[10]    That same day, Dr. Trobridge asked Dr. Alunday to clear Hatton for the kyphoplasty; Dr. Alunday was familiar with the process of clearing a patient for surgery.  In determining whether to clear Hatton, Dr. Alunday noted that Hatton had no other health issues—such as cardiovascular or pulmonary problems—and good labs and vital signs.  But because she was still receiving antibiotics for MRSA, Dr. Alunday wanted to "make sure whether or not she still had MRSA in the blood stream" because he knew that if Hatton still had MRSA, the procedure would kill her.  *Id.* at 54, 74.  So Dr. Alunday ordered a new blood culture, which came back negative for MRSA on April 17.

---

[3] "Kyphoplasty is used to treat painful compression fractures in the spine."  MedlinePlus, *Kyphoplasty*, available at https://www.nlm.nih.gov/medlineplus/ency/article/007511.htm (last visited Apr. 5, 2016). During the procedure, the doctor places a needle through the skin and into the spine bone.  Real-time x-ray images are used to guide the doctor to the correct area.  *Id.*  A balloon is placed through the needle, into the bone, and inflated, which restores the height of the vertebrae.  *Id.*  Cement is then injected into the space to make sure it does not collapse again.  *Id.*

According to Dr. Alunday, even though Hatton was on a therapeutic dose of vancomycin, which can sometimes mask MRSA, if there was a "strong" MRSA infection, it would have shown up in her blood culture. *Id.* at 54. Based on the negative blood culture, Hatton's good vital signs, the fact that the March 27 MRI showed no infection, and the fact that Hatton was in debilitating back pain with no relief from narcotics, Dr. Alunday cleared Hatton for the outpatient procedure.

[11] Dr. Trobridge performed the kyphoplasty on April 17. Dr. Trobridge found no signs of infection in Hatton's spine. Although Hatton was initially stable following the procedure, by mid-May she developed a widespread MRSA infection. Hatton died on May 26.

[12] Susan Stewart, Hatton's daughter and the personal representative of Hatton's estate, filed a proposed complaint for medical malpractice against Dr. Alunday with the Indiana Department of Insurance. In April 2012, the Medical Review Panel unanimously concluded that the evidence did not support the conclusion that Dr. Alunday failed to meet the applicable standard of care.

[13] Stewart then filed a complaint against Dr. Alunday in Decatur Superior Court in June 2012. Stewart alleged that the "medical care and treatment received by Joanne Hatton fell below the appropriate standard of care and was therefore

negligent."[4]  Appellant's App. p. 19.  A five-day jury trial was held in March 2015.  Dr. Alunday testified extensively on direct examination about his efforts to determine whether Hatton still had a MRSA infection before clearing her for the kyphoplasty.  He also testified that his decision in clearing Hatton was reasonable and appropriate and that he met the standard of care.  Tr. p. 62-63.  Stewart's attorney then cross-examined Dr. Alunday, in part, as follows:

Q. Okay.  Turn to page six (6), will you please?  Are you there?

A. Yes, sir.

Q. Do you see right in the middle of the page, everybody there?  Right in the middle of the page, the statement, a reasonable physician should be concerned that MRSA would have seeded to compression fracture in an elderly patient with acute onset back pain with evidence of compression fracture on . . . Vancomycin (indiscernible) MRSA.  Do you see that?

A. Yes.

Q. Is that a true statement?

A. Yes, sir.

---

[4] To establish a prima facie case of medical malpractice, a plaintiff must demonstrate: (1) a duty on the part of the defendant in relation to the plaintiff; (2) failure to conform his conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure.  *Scripture v. Roberts*, No. 49A02-1504-CT-211, slip op. at 7 (Ind. Ct. App. Feb. 1, 2016).

Q. And if a doctor fails to consider that, it would fall below the appropriate standard of care?

A. It would be a consideration, but I had other circumstances of the compression fracture due to osteoporosis—

Q. I understand—

A. As . . . higher on the list of causing that fracture.

Q. I understand that you want to explain that, but what I'm asking you is would it fall below the appropriate standard of care if the physician does not consider?

A. Well, if he does not consider it, okay.

Q. Does it fall below the appropriate standard of care?

A. If it's not considered, okay.

Q. Does it fall below the appropriate standard of care?

A. Yes, sir.

Q. Uh, please turn back to page five (5), . . . about two-thirds (2/3) of the way down the page. MRSA in fracture did not cross your mind at all. . . . Did I read that correctly? MRSA in fracture did not cross your mind at all?

A. (Indiscernible) that's what's written there, sir.

Tr. p. 110-12. The two pages that Stewart's attorney referenced are part of Dr. Alunday's submission to the Medical Review Panel and labeled as Plaintiff's Exhibit 5 at trial. These are the only pages from Dr. Alunday's panel submission that Stewart introduced into evidence at trial. The actual quotes are:

- "MRSA in fracture did not cross his mind at all." (quote from page 5)

- "A reasonable physician should be concerned that MRSA could have seeded to compression fracture in an elderly patient with acute onset back pain with evidence of compression fracture on Vancomycin for treatment of MRSA." (quote from page 6)

Appellant's App. p. 17-18. These "quotes," however, are not statements made by Dr. Alunday; instead, they are bullet points that Dr. Alunday's attorney made when summarizing Dr. Alunday's deposition. *See* Tr. p. 108 (Dr. Alunday's attorney objecting to the admission of Exhibit 5 because it was attorney work product and not made under oath). On redirect examination, Dr. Alunday clarified that contrary to the quote on page 5 of Exhibit 5, which said "MRSA in fracture did not cross his mind at all," he in fact considered but then ruled out MRSA based on the March 27 MRI that showed no infection and Hatton's second blood culture, which came back negative for MRSA on April 17. *Id.* at 122.

[14] At the close of Dr. Alunday's case in chief, Stewart's attorney moved for judgment on the evidence. *Id.* at 277. Specifically, Stewart's attorney, relying

on the above portion of Dr. Alunday's cross-examination, alleged that Dr. Alunday made a judicial admission that he breached the standard of care, thereby leaving only the issues of causation and damages for the jury. *Id.* at 278. Dr. Alunday's attorney responded that there was other evidence that Dr. Alunday met the standard of care, including his testimony "from the witness chair that he believes he met the standard of care." *Id.* After taking the matter under advisement, the trial court denied Stewart's motion. *Id.* at 283 (concluding that Dr. Alunday's testimony was "very equivocal" because "on his direct he said he met the standard of care"). The jury returned a general verdict in favor of Dr. Alunday.

[15] Stewart then filed a motion to correct errors asking the trial court to grant her motion for judgment on the evidence because Dr. Alunday made a judicial admission, which "relieve[d] the Estate of the duty to put forth any further evidence that Dr. Alunday breached the appropriate standard of care." Appellant's App. p. 22. In its order denying Stewart's motion, the trial court found that Dr. Alunday "made a judicial admission during the course of trial" when he (1) "admitted that a reasonable physician would have been concerned that MRSA could have seeded to a compression fracture in the back of an elderly patient with acute onset back pain" and (2) "admitted that his conduct fell below the appropriate standard of care as MRSA did not cross his mind under these circumstances." *Id.* at 12 (footnote omitted). Nevertheless, based upon this Court's opinions in *Weinberger v. Boyer*, 956 N.E.2d 1095 (Ind. Ct. App. 2011), *trans. denied*, and *Waugh v. Kelly*, 555 N.E.2d 857 (Ind. Ct. App.

1990), the trial court concluded that "[Dr.] Alunday's judicial admission was to be considered by the trier of fact who would consider it and weigh it as other evidence," and the jury did weigh this evidence yet returned a verdict in favor of Dr. Alunday.  Appellant's App. p. 12.

[16]   Stewart now appeals.

# Discussion and Decision

[17]   Stewart contends that the trial court erred in denying her motion for judgment on the evidence.  Indiana Trial Rule 50(A) governs motions for judgment on the evidence and provides, in pertinent part:

> Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict.  A party may move for such judgment on the evidence[:]
>
> > (1) after another party carrying the burden of proof or of going forward with the evidence upon any one or more issues has completed presentation of his evidence thereon; or
> >
> > (2) after all the parties have completed presentation of the evidence upon any one or more issues; or
> >
> > (3) after all the evidence in the case has been presented and before judgment; or

(4) in a motion to correct errors; . . .

The purpose of a Trial Rule 50(A) motion for judgment on the evidence is to test the sufficiency of the evidence presented by the non-movant. *Purcell v. Old Nat'l Bank*, 972 N.E.2d 835, 839 (Ind. 2012). A motion for judgment on the evidence should be granted "only when there is a complete failure of proof because there is no substantial evidence or reasonable inference supporting an essential element of the claim." *Raess v. Doescher*, 883 N.E.2d 790, 793 (Ind. 2008) (quotation omitted), *reh'g denied*. But if there is evidence that would allow reasonable people to differ as to the result, judgment on the evidence is improper. *Cavens v. Zaberdac*, 849 N.E.2d 526, 529 (Ind. 2006).

[18] The standard of review for a challenge to a trial court's ruling on a motion for judgment on the evidence is the same standard that governed the trial court in making its decision. *Id.* This Court considers only the evidence and reasonable inferences most favorable to the nonmoving party. *Raess*, 883 N.E.2d at 793. Where the issue involves a conclusion of law based upon undisputed facts, the standard of review is de novo. *Cavens,* 849 N.E.2d at 529.

[19] Stewart argues that Dr. Alunday made a judicial admission and that—contrary to the trial court's conclusion in its order denying her motion to correct errors— the judicial admission is conclusive and binding. Before addressing whether Dr. Alunday made a judicial admission, we clarify the law regarding the legal effect of judicial admissions.

# I. Judicial Admissions Are Conclusive

[20] There are two types of admissions: judicial and evidentiary. 32 C.J.S. *Evidence* § 624 (2008). Evidentiary—also known as extrajudicial—admissions consist of words or other conduct of the party that are admissible in evidence against the party. *Id.* They may be made in, among other things, depositions, pleadings in a case other than the one being tried, pleadings that have been superseded or withdrawn, answers to interrogatories, and other statements, such as statements by party opponents. *Id.*; *see also* 13 Robert Lowell Miller, Jr., Indiana Practice, *Indiana Evidence* § 801.416 (3d ed. 2007) (addressing statements by party opponents). Judicial admissions, on the other hand, are voluntary and knowing concessions of fact by a party or a party's attorney occurring at any point in a judicial proceeding. 32 C.J.S., *supra*, § 624; 9 Wigmore, *Evidence* § 2588 (Chadbourn rev. 1981) (explaining that a judicial admission is an "express waiver made in court or preparatory to trial by the party or his attorney conceding for the purposes of the trial the truth of some alleged fact"). The party must testify clearly and unequivocally to a fact peculiarly within his knowledge in order for it to be considered a judicial admission. 32A C.J.S., *supra*, § 1649. Judicial admissions may be contained in stipulations, current pleadings in the case being tried, admissions made in open court, and admissions made pursuant to requests to admit. 32 C.J.S., *supra*, § 624.

[21] The distinction between judicial and evidentiary admissions is "significant" and "should not be blurred by imprecise usage." *Id.*; *see also* 29A Am. Jur. 2d Evidence § 785 (2d ed. 2008). This is because, although both types are

admissible, each type's "legal effect is markedly different." 32 C.J.S., *supra*, § 624. While evidentiary admissions can be accepted or rejected by the trier of fact, judicial admissions are conclusive and binding on the trier of fact. *Id.*; 9 Wigmore, *supra*, § 2588 (explaining that judicial admissions, which are conclusive, are "sharply marked off" from evidentiary admissions, which are not conclusive). In fact, it is "universally conceded" that the "vital feature of a judicial admission is . . . its conclusiveness upon the party making it, i.e., the prohibition of any further dispute of the fact by him and of any use of evidence to disprove or contradict it." 9 Wigmore, *supra*, § 2590. Simply put, a judicial admission is "a substitute for evidence, in that it does away with the need for evidence." 9 Wigmore, *supra*, § 2588; *see also Lutz v. Erie Ins. Exch.*, 848 N.E.2d 675, 678 (Ind. 2006) (noting that judicial admissions may be "taken as true as against the party without further controversy or proof" and are "conclusive as to that party"); 29A Am. Jur. 2d, *supra*, § 783 (noting that judicial admissions are used as a substitute for evidence at trial); 6 Terrance L. Smith & Adrian P. Smith, Indiana Practice, *Trial Handbook for Indiana Lawyers* § 32:18 (2015 ed.) ("Admissions made in the course of judicial proceedings are substituted for actual proof of a fact.").

[22] Here, the trial court found that Dr. Alunday made a judicial admission but, citing *Weinberger v. Boyer*, 956 N.E.2d 1095 (Ind. Ct. App. 2011), *trans. denied*, and *Waugh v. Kelly*, 555 N.E.2d 857 (Ind. Ct. App. 1990), concluded that the judicial admission was not conclusive and binding. Instead, the court found that Dr. Alunday's judicial admission should "be considered by the trier of fact

who would consider it and weigh it as other evidence." Appellant's App. p. 12. The trial court's confusion about the legal effect of judicial admissions stems from language contained in *Weinberger* and *Waugh*. That is, *Waugh* correctly begins by stating that a judicial admission is conclusive upon the party making it and relieves the opposing party of the duty to present evidence on that issue. 555 N.E.2d at 859. However, the *Waugh* Court then veers off course by including the standard for evidentiary—not judicial—admissions:

> Admissions are to be considered and weighed precisely as other evidence in the case by the trier of fact. An admission's weight depends upon its character, the circumstances under which it was made, and the effect of such circumstances is to be determined by the trier of fact.

*Id.* *Waugh* cites a 1919 case for this proposition: *Warner Gear Co. v. De Peugh*, 70 Ind. App. 264, 123 N.E. 363 (1919). *De Peugh*, however, is not a judicial-admission case; rather, it addresses statements against interest, which are evidentiary admissions. *See now* Ind. Evidence Rule 804(b)(3). Specifically, De Peugh was injured at work and sued his employer. Witnesses testified at trial that shortly after De Peugh was injured, he said, "It was all my fault." *De Peugh*, 123 N.E. at 363. On appeal, we held that De Peugh's "admission or declaration, being against interest" was admissible at trial and "to be considered and weighed precisely as other evidence. The weight of such evidence depends upon its character and the circumstances under which the admissions were made, and the effect of such circumstances is to be determined by the jury." *Id.*

Likewise, *Weinberger*, relying on *Waugh,* correctly begins by stating that a judicial admission is conclusive upon the party making it and relieves the opposing party of the duty to present evidence on that issue. *Weinberger*, 956 N.E.2d at 1105. But then *Weinberger*, citing our Supreme Court's decision in *Lutz*, provides that judicial admissions "are to be considered and weighed precisely as other evidence in the case by the trier of fact. An admission's weight depends on its character, the circumstances under which it was made, and the effect of such circumstances is to be determined by the trier of fact." *Id.* (citing *Lutz*, 848 N.E.2d at 678). But as Stewart notes on appeal, *see* Appellant's Br. p. 16, *Lutz* does not say this; rather, *Waugh* does.

Because of an error made in 1990 in *Waugh* that commingled the standards for judicial and evidentiary admissions, which has since been repeated in other cases including *Weinberger*, we now clarify that unlike evidentiary admissions, which the trier of fact may accept or reject, judicial admissions are conclusive and binding on the trier of fact.

## II. Dr. Alunday Did Not Make a Judicial Admission

We now address whether Dr. Alunday made a judicial admission, because if he did, then that issue should have been removed from the jury. *See* 32A C.J.S. *Evidence* § 1649 (2008) (explaining that even if a case has been fully tried, if a party makes a judicial admission, then "the court must instruct that the admitted fact is to be taken as true or it must direct a verdict accordingly.").

Whether a party's statement constitutes a judicial admission is a question of law. *See* 29A Am. Jur. 2d, *supra*, § 783.

[26] Stewart claims that Dr. Alunday made a judicial admission when he testified at trial.[5] Stewart focuses on two statements. The first statement is when Dr. Alunday agreed on cross-examination that, consistent with the statements contained on page 6 of Exhibit 5, (1) a reasonable physician should be concerned that MRSA could have seeded to a compression fracture in an elderly patient with acute onset back pain and on vancomycin for treatment of MRSA and (2) failure to consider this would fall below the appropriate standard of care. The second statement is when Dr. Alunday simply agreed on cross-examination that page 5 of Exhibit 5 contained the statement that "MRSA in fracture did not cross his mind at all." Stewart argues that when these two statements are combined, Dr. Alunday judicially admitted that he breached the standard of care by failing to consider whether MRSA could have spread to Hatton's compression fracture.

[27] There are two problems with Stewart's argument. The first problem is that the second statement, which is the key to Stewart's argument, is not a judicial

---

[5] Notably, Stewart does not claim that the statements contained in Dr. Alunday's submission to the Medical Review Panel constitute a judicial admission. *See* Appellant's Reply Br. p. 4 (Stewart noting that she "does not contend that Dr. Alunday's submission to the medical review panel is a pleading or a Judicial Admission"), 9 (Stewart noting that she "has never argued that the statements in the submission are binding admissions. As the trial court established in its Order on the Motion to Correct Error, Dr. Alunday's testimony constitutes his Judicial Admission."). Indeed, the statements contained in Dr. Alunday's panel submission are not judicial admissions because a panel submission is not a pleading. *See* 13 Robert Lowell Miller, Jr., *supra*, § 801.422 (citing Ind. Trial Rule 7(A)).

admission. This is because Dr. Alunday merely agreed that Exhibit 5 contained the statement that "MRSA in fracture did not cross his mind at all." Unlike the first statement, Stewart's attorney did not ask Dr. Alunday if he agreed with the statement. And, of course, Exhibit 5 is a summary of Dr. Alunday's deposition made by his attorney. Because Dr. Alunday did not testify that he agreed with the statement but rather only agreed that Exhibit 5 contained that statement, he did not judicially admit that he failed to consider whether MRSA could have spread to Hatton's compression frature.

[28] The second problem is that when determining whether a party has made a judicial admission, the party's testimony must be considered as a whole and be clear and unequivocal. 32A C.J.S., *supra*, § 1649. Accordingly, even assuming that Dr. Alunday testified on cross-examination that he agreed with the statement that he did not consider whether MRSA could have spread to Hatton's compression fracture (which would therefore fall below the standard of care based on his first statement), he testified on direct examination that he did, in fact, consider whether Hatton still had a MRSA infection. That is, Dr. Alunday testified that his primary consideration in clearing Hatton for the kyphoplasty was to determine whether she still had a MRSA infection, and that because the second blood culture was negative for MRSA and the March 27 MRI did not show any infection, it was reasonable to say that MRSA had not spread to her compression fracture. *See, e.g.*, Tr. p. 54 (Dr. Alunday testifying that in order to decide whether to clear Hatton, he "wanted to make sure whether or not she still had MRSA in the blood stream"), 59 (Dr. Alunday

testifying about the factors he considered in clearing Hatton for the procedure, including that Hatton's second blood culture was negative for MRSA), 63 (Dr. Alunday testifying that he "met the standard of care"), 122 (Dr. Alunday testifying that he ruled out MRSA after the negative blood culture, and that because the March 27 MRI did not show any infection in Hatton's back, it was reasonable to say that MRSA had not spread there); *see also* Ex. Vol. I, tab 15, p. 11 (Dr. Alunday denying Stewart's request for admission that he "never considered an infection seeding to the compression fracture as a cause of [Hatton's] back pain complaints"). Accordingly, based on Dr. Alunday's testimony as a whole, he did not unequivocally admit that he failed to consider whether MRSA could have spread to Hatton's compression fracture. We therefore affirm the trial court's denial of Stewart's motion for judgment on the evidence.[6]

[29] Affirmed.

Bailey, J., and Crone, J., concur.

---

[6] In light of this result, we do not need to address Stewart's argument that she is entitled to a new trial on the issues of causation and damages.