ATTORNEYS FOR APPELLANT

Karl L. Mulvaney
Nana Quay Smith
Dentons Bingham Greenebaum LLP
Indianapolis, Indiana

James Ludlow
James F. Ludlow, Attorney at Law P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Edward F. Harney, Jr.
Erin M. Radefeld
Hume Smith Geddes Green &
Simmons, LLP
Indianapolis, Indiana



FILED

Aug 17 2020, 10:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Judy Vigus, as the Administratrix of the Estate of Ruth C. Vigus and of the Estate of Eugene Vigus, <br><br> *Appellant-Plaintiff,* <br><br> v. <br><br> Dinner Theater of Indiana, L.P., <br><br> *Appellee-Defendant.* | August 17, 2020 <br><br> Court of Appeals Case No. 19A-CT-1365 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Michael D. Keele, Special Judge <br><br> Trial Court Cause No. 49D07-1302-CT-6951 |

**Najam, Judge.**

# Statement of the Case

Judy Vigus, as administratrix of the Estates of Ruth C. Vigus and Eugene Vigus ("Vigus"), appeals the trial court's judgment for Dinner Theater of Indiana, L.P. ("the Theater") following a jury trial on Vigus's complaint alleging negligence. Vigus raises two issues on appeal, which we restate as follows:

1. Whether the trial court erred when it revoked a pretrial order and did not instruct the jury that the Theater had made a judicial admission of a building code violation.

2. Whether the trial court abused its discretion when it denied Vigus's attempt to admit into evidence statements the Theater's owners had made after Ruth's fall to seek a variance for the step's height rather than reduce that height.

We affirm.

# Facts and Procedural History

On August 30, 2012, Ruth and Eugene Vigus went to the Derby Dinner Playhouse in Clarksville. The Derby Dinner Playhouse offers customers a buffet dinner along with a live show. The Theater is the corporate owner of the Derby Dinner Playhouse, and the Theater is owned and operated by Rebecca Jo Saunders and Cynthia Knopp.

That evening, Ruth and Eugene were seated at a table on a riser. The step up to, or down from, the table was approximately ten inches. Ruth and Eugene successfully went up the step to initially sit at the table, and Ruth successfully

got down from and back up the step in the course of visiting the buffet for herself and for Eugene. However, when they attempted to leave at the end of the show, Ruth fell off the step and broke her hip.

[5] Thereafter, Ruth sued the Theater for negligence, and Eugene sued for loss of consortium. During the course of the proceedings, both Ruth and Eugene died, and Vigus took over the suit as administratrix of their estates. Meanwhile, the Theater moved for a preliminary determination as a matter of law that a building code violation in the height of the step was not negligence per se. Specifically, the Theater sought a motion in limine "[p]recluding a negligence per se jury instruction for any potential Building Code . . . violation." Appellant's App. Vol. 2 at 124. Noting that Vigus had "no objection," the court granted the Theater's request. *Id.*

[6] In September of 2017, the trial court held a hearing on other pending motions ("2017 hearing"). At that hearing, counsel for the Theater engaged the court in the following colloquy:

> [Counsel for the Theater]: *Our experts do not say that the step . . . as built, complies with any code . . . .*
>
> *As designed, it did.* It was designed for nine inches. It was built. It's about nine and three-quarters or ten inches . . . . So we're not even in a situation where we're saying it complies with the Building Code . . . .
>
> So *we're on the same page as to the existence of the Building Code violation as built* and we agree on that, none of this other stuff . . . is relevant.

THE COURT:  Because the Building Code is . . . seven and-a-half[,] is that right?

[Counsel for the Theater]:  Well, . . . [t]heir expert will say seven and-a-half for a step.

THE COURT:  Okay.

[Counsel for the Theater]:  Our expert says nine inches for a riser.

THE COURT:  Riser.

[Counsel for the Theater]:  Which is why step and riser [are] different. . . .

* * *

. . . So . . . in any event, . . . it's too tall as built. . . .

* * *

And on this violation issue and the Building Code violation, we don't disagree that, *as built, it['s] evidence of negligence*. . . .

* * *

I feel like I'm in the Twilight Zone with some of these things . . . . [Plaintiff's counsel and I are] not communicating very well.  I think I heard [plaintiff's counsel] say that [the Theater says the ten-inch step] complies with the [local] Building Code, and I think I just said that that's not the case.  Our expert doesn't say that because we can't . . . .  [The step] is ten inches.  Evidence of negligence, certainly.  We know that, but *not [a] Building Code violation*.

* * *

> Plaintiff[s] say in their response, This evidence is fair to show the existence of [a] Building Code violation. Again, *we don't deny there's a Building Code violation*.

Tr. Vol. 2 at 149-51, 157-58 (emphases added).

[7] About one and one-half years later, on the day before the jury trial was to begin, Vigus moved to have the statements made by the Theater's counsel at the 2017 hearing declared to be a judicial admission that the step at issue was in violation of relevant building codes. In that motion, Vigus asked

> that the Court issue an Order that conclusively finds that the step which allegedly caused Plaintiff's injury was 10" in height, that this step was in violation of Indiana Building Code, that this evidence is conclusive, that Defendant cannot contradict these facts at any point throughout the trial, and for all further relief which is just and proper.

Appellant's App. Vol. 9 at 61. In her motion, Vigus did not request a jury instruction on this issue. Within hours, the Theater filed a motion to strike denying that counsel for the Theater had "made such an admission under applicable Indiana law." Appellant's App. Vol. 9 at 108. On the same day, the trial court denied the Theater's motion to strike and granted Vigus's motion in part. The court found that "the step . . . was a violation of [the] applicable Indiana Building Code," and it prohibited the Theater "from attempting to submit argument or evidence to contradict these conclusive facts." *Id.* at 118. But in its order, the trial court struck the finding proposed by Vigus that the step "has been conclusively established as being 10" in height." *Id.*

The next day, during voir dire, a prospective juror asked the Theater's counsel, "Did you say . . . [the code] was indeed broken?" Tr. Vol. 3 at 104. The Theater's counsel replied, "The code was broken. *There will be evidence of a building code violation.*" *Id.* (emphasis added). Then, immediately following voir dire, the court asked counsel for both sides how to proceed with the "stipulation" or the Theater's "admission" on the building code violation. *Id.* at 132. The following discussion ensued:

> [Counsel for the Theater]: The admission . . . we will admit that there is a Building Code violation as to the step, *as built*, being higher than nine inches.
>
> * * *
>
> THE COURT: . . . Thank you. And that's a stipulation?
>
> [Counsel for the Theater]: Correct.
>
> THE COURT: Thank you.
>
> [Counsel for the Theater]: Well, it's a ruling on your part.
>
> THE COURT: I guess it is. That's true. But I'm just, I guess, frankly surprised that it wasn't by stipulation of the parties.
>
> [Counsel for the Theater]: I think it's just because there's—it's a bit semantic in terms of an expert would come in and say, you know, ["]Most of you would not get cited for that type of infraction,["] but I can't say it's lower than nine inches *as built*.
>
> THE COURT: Right. And that's why I didn't include—there was a proposed order saying about the height.

[Counsel for the Theater]:  Right.

THE COURT:  We don't…

[Counsel for the Theater]:  That part we don't dispute.

THE COURT:  We don't.  Okay.

[Counsel for Vigus]:  *So the jury will be informed that this is a Building Code violation, that the step is . . .*

THE COURT:  Right.

[Counsel for Vigus]:  The step in question is a Building Code violation?

THE COURT:  That the step, *as built*…

[Counsel for the Theater]:  Is higher than nine inches which is violative of the code.

THE COURT:  Which is violative of the Building Code. Correct.  And I just presumed—forgive me for presuming this— that the parties, again, *if not agreeing, then [Vigus] would mention, explain that*.

[Counsel for the Theater]:  Absolutely.

THE COURT:  Right.

[Counsel for the Theater]:  And we will explain nine inches and how it's *as built*.

THE COURT:  Absolutely.

[Counsel for the Theater]:  *Being violative.*  But the question though then becomes provided—because I—the way I read the

order was I can't argue it's not basically. *So as long as I don't say,* ["]*We didn't violate [the] Building Code*["] . . .

THE COURT: *Right.*

* * *

[Counsel for Vigus]: Your Honor, I wanted to make clear that we're not stipulating that the step should have been nine inches.

[Counsel for the Theater]: No. . . . Their expert is saying it's seven and-a-half inches.

THE COURT: Right. We're going to hear from experts with respect to that issue. . . .

*Id.* at 132-34 (emphases added).

[9] Vigus's counsel then proceeded with his opening argument and informed the jury that

> there is no dispute there is a building code violation with this particular step, that is[,] *the judge will instruct you that that is taken as a given.* That is something that—we don't need to prove it. It's—*you'll be instructed that there is a building code violation.*

*Id.* at 137 (emphases added). Thereafter, counsel for the Theater informed the jury in his opening argument that

> [y]ou will hear evidence that [the step] was constructed according to plans in 1974. . . .

I will challenge Plaintiff's expert, . . . who will come in and say that it's seven inches[, t]hat's what's required. A step is required to be seven inches. Our expert will say differently. . . .

What you will hear from our expert from that perspective is that there was some plywood put on top, the carpeting put on top, and that gave it the nominal distance past the nine inches.

*What you will not hear . . . is this idea that the judge is going to tell you that there was a building code violation. It's not going to happen. It's not going to be one of the instructions.*

*Id.* at 156-57 (emphasis added).

[10] Vigus did not object to the Theater's opening statement as inconsistent with the court's pretrial order. Later, during her case-in-chief, Vigus's expert, Lee Martin, testified that relevant building codes required the step to be seven and one-half inches, that the step at issue exceeded that, that that difference was contrary to the safety purposes underlying the code's standard, and that the height of this step was the single most significant cause in Ruth's fall. And Martin explicitly testified that "*this is a Building Code violation*" and added that it was also "a Fire Code violation." *Id.* at 192 (emphasis added).

[11] During its ensuing case-in-chief, the Theater called its own expert witness, Greg Wisniewski. He testified that the building's construction plan called for a nine-inch riser, which was correct under the relevant code at that time, and that the building received a certificate of occupancy following its construction, which was evidence that the structure as built was "reasonably compliant with . . . what the code requires." Tr. Vol. 6 at 3. He also testified that a nine-

inch riser "complies with the current code," which was likely "more stringent" than the code at the time of construction. *Id.* at 7-8. Regarding the riser from which Ruth fell, Wisniewski testified that it was in excess of nine inches by "some fraction," i.e., seven-eighths of an inch, but it was not quite "ten inches" in height. *Id.* at 18. But he expressly acknowledged that the riser "exceeds the nine inches" that was called for in the construction plan. *Id.* According to Wisniewski, that difference was likely attributable to adding about one-half inch of plywood on top of the concrete and then adding about one-quarter-inch thick carpet to the plywood. Vigus did not object to Wisniewski's testimony and, specifically, she did not object that any part of his testimony contradicted the trial court's pretrial order on the Theater's judicial admission.

[12]     After Wisniewski's testimony, the Theater asked the court to reconsider its pretrial order granting Vigus's motion for the judicial admission and to deny the Theater's motion to strike. The court responded as follows:

> . . . After what I've heard from the experts, I don't know if there's a Building Code violation . . . and *I won't include an instruction that as built it's a Building Code violation* because I don't know that.
>
> * * *
>
> . . . I think there's a discrepancy. . . . I think you can argue respectively based on what your experts have testified to, about their research and their findings . . . .
>
> The only reason I entered [that pretrial order] was because . . . [counsel for the Theater] did, in fact, indicate that he *believed* there was a Building Code violation.

But, again, based on what I've heard from these experts, I don't have a clue. I know what we do know and what the jury should understand is that these plans, *as built*, prepared by architects charged with that knowledge and responsibility and then getting the building authorities to review and approve, I mean, it was stamped, sealed[,] and then built . . . .

. . . *I'm not comfortable with a judicial admission that there was a Building Code violation because I've not heard that.*

*Id.* at 77-78 (emphases added). Vigus then stated that, "once that admission is made . . . , then that fact is taken as conclusively established . . . [e]ven if it's wrong" and "contradictory evidence thereafter will not be considered . . . ." *Id.* at 79.

[13] The court took the matter under advisement and, the next day, before it instructed the jury, returned to the topic of the Theater's admission. The parties then engaged with the court as follows:

> [Counsel for the Theater]: . . . [T]here w[ere] no repercussions as we were always contending the height was . . . it was undisputed what it was. We all knew it was nine and three-quarters.
>
> THE COURT: Right.
>
> [Counsel for the Theater]: We contended nine. They contended seven. That was disputed.
>
> THE COURT: Right. . . . But let me ask this. What wasn't disputed is that the nine and three-quarters . . . close to ten is not in compliance with the approved plans submitted?
>
> [Counsel for the Theater]: True. That's true as built.

THE COURT:  Exactly. . . .  As built.  Because the plans . . . called for nine inches?

[Counsel for the Theater]:  Right.

THE COURT:  So as constructed, not in compliance with approved building . . . plans.

[Counsel for the Theater]:  Agreed. . . .  [A]nd then Mr. Wisniewski explained why that would be the case . . . .

THE COURT:  Well, right.  We heard conflicting testimony from the experts.  Yes[, g]entlemen?

[Counsel for Vigus]:  Your Honor . . . the issue is that once a judicial admission is made, can it be taken back?  *There is . . . no dispute . . . that the step, as built, was not compliant with the plans.*

THE COURT:  Right.  Everybody agrees with that.  I agree with that.  I can judicially admit that.  I think the jury will understand that.  They should understand that.  As built . . . it doesn't comply with the plans which called for nine inches.

[Counsel for Vigus]:  Now, the question is . . . that [counsel for the Theater], in that [September 2017] hearing, did say . . . "We do not dispute that there's a Building Code violation."  I believe that was the quoted language. . . .  So there is a judicial admission. . . .  [Case law] says that once that judicial admission is made, then evidence to contradict that cannot be considered or admitted.  I think the Defense has . . . tried to submit evidence that basically says, Well, you know, okay.  So it is an inch. . . .  [B]ut that doesn't take away the fact . . . that[ it is] still not built in accordance with the plans.  So it is a Building Code violation because it's *not built according to the plans.*

* * *

THE COURT:  . . . [A] judicial admission is . . . a substitute for evidence at trial.  We heard evidence and conflicting evidence from two experts with respect to that issue.  I can't find that it's a Building Code violation.  I can't do that.  *So the motion to strike or vacate the order that was entered [the day before trial began] is granted.*  But, again, that doesn't mean that there isn't an admission . . . that, as built, . . . [the step] was not built in compliance with approved building plans . . . .  And argue that and point that out because that's, in fact, the case.

\* \* \*

[Counsel for Vigus]:  . . . [B]oth parties have told the jury—[counsel for the Theater] said that—words to the effect . . . that there is a building code violation in his opening statement or Voir Dire.  I said the same thing, . . . that[ t]he Court is going to tell you that there's a building code violation based upon your current order . . . .  So I'm trying to figure out . . . what's the best way to not come across as a liar to the jury on that topic.

\* \* \*

[Counsel for the Theater]:  . . . [H]e did say, The judge is going to instruct you.  *I think that was a misinterpretation of . . . how you were going to handle the actual situation.*

\* \* \*

THE COURT:   . . . I think the best way . . . is simply at this point emphasizing that . . . the structure, as built, does not comply with plans approved by all appropriate government entities at the time because that's not in dispute . . . .

[Counsel for Vigus]:  *Okay.*

THE COURT:  And I do see that in the revised proposed finals—thank you.  I didn't see one but perhaps that was

anticipating how I might rule on the motion. *But I see that you
didn't include an instruction as it relates to the judicial admission of a
building code violation but instead have included some other language
that I do think based on the evidence that we've heard is appropriate.*

Tr. Vol. 7 at 33-41 (emphases added).

[14] The court then adopted Vigus's Proposed Final Instruction Number 11 and
instructed the jury in relevant part as follows:

> At the time of Ruth Vigus'[s] injury, there were certain Indiana
> Building Codes . . . and industry practices that [the Theater] was
> subject to . . . relat[ing] to the safe construction and maintenance
> of the building. You are to consider the violation of any Indiana
> Building Code . . . or industry practice as evidence of
> negligence . . . .

*Id.* at 108; *see* Appellant's App. Vol. 9 at 159. Vigus proposed no other
instructions with respect to the Theater's alleged judicial admission. And Vigus
did not move the court for leave to recall any witnesses or otherwise submit
additional evidence relevant to the building code violation. The jury returned a
verdict for the Theater, and the court entered judgment for the Theater
accordingly. This appeal ensued.

# Discussion and Decision

### *Issue One: Judicial Admission*

[15] Vigus first contends that the trial court erred when it revoked its pretrial order
finding that the Theater had made a judicial admission on the question of a
building code violation. It is well settled that a trial court may reconsider an

order or ruling if the action remains *in fieri*, or pending resolution. *Lewis v. Toliver (In re Estate of Lewis)*, 123 N.E.3d 670, 673 (Ind. 2019). We review such reconsiderations for an abuse of discretion. *Id.* An abuse of discretion occurs when the court's decision either clearly contravenes the logic and effect of the facts and circumstances or misinterprets the law. *River Ridge Dev. Auth. v. Outfront Media, LLC*, 146 N.E.3d 906, 912 (Ind. 2020).

[16] As this Court has explained,

> [a] judicial admission "is an admission in a current pleading or made during the course of trial; it is conclusive upon the party making it and relieves the opposing party of the duty to present evidence on that issue." *Weinberger v. Boyer*, 956 N.E.2d 1095, 1105 (Ind. Ct. App. 2011), *trans. denied*. "Statements contained in a party's pleadings may be taken as true as against the party without further controversy or proof." *Lutz v. Erie Ins. Exch.*, 848 N.E.2d 675, 678 (Ind. 2006). "Opposing parties prepare their case on the assumption that facts admitted by other parties require no proof. For this scheme to work properly, parties must be entitled to rely on trial courts to treat admissions in pleadings as binding on the party making the admission." *Id.*

*Brazier v. Maple Lane Apts. I, LLC*, 45 N.E.3d 442 (Ind. Ct. App. 2015), *trans. denied*. However, "[a] party must testify clearly and unequivocally to a fact peculiarly within his knowledge in order for it to be considered a judicial admission." *Stewart v. Alunday*, 53 N.E.3d 562, 568 (Ind. Ct. App. 2016). And this Court has held that where "'there is ambiguity or doubt in a statement'" made by a party's attorney, "'it is presumed that the attorney did not intend to make an admission.'" *Sans v. Monticello Ins. Co.*, 718 N.E.2d 814, 816 n.3 (Ind.

Ct. App. 1999) (quoting *Lystarczyk v. Smits*, 435 N.E.2d 1011, 1014 (Ind. Ct. App. 1982)), *trans. denied*.

[17]     In her brief on appeal, Vigus maintains that the Theater's counsel's statements during the 2017 hearing and during and immediately following voir dire, "individually and collectively, constituted a judicial admission that the step in question did not comply with the applicable building code."[1]  Appellant's Br. at 46.  Whether a party's statement constitutes a judicial admission is a question of law, which we review de novo.  *See Stewart*, 53 N.E.3d at 570.  We decline to cherry pick a particular statement by counsel to the exclusion of other statements.  When we consider, as we must, both the content and context of the statements by counsel, as a whole, we conclude that counsel's statements did not amount to a clear and unequivocal statement of fact.  *See id.* at 570.  Thus, we cannot agree with Vigus's assertion, made during her opening argument at trial, that "there is no dispute there is a building code violation."  Tr. Vol. 3 at 137.

---

[1] We note that the parties dispute whether a judicial admission can occur "at any point in a judicial proceeding" or may only occur in a pleading or during the course of a trial.  We need not resolve that issue, but we observe that the statement in *Stewart* that a judicial admission can occur "at any point in a judicial proceeding" is mere dicta and unsupported by prior Indiana case law.  53 N.E.3d at 568.  This statement was part of a general discussion clarifying case law, the essential distinction between judicial and evidentiary admissions, and the conclusive legal effect of judicial admissions.  The statement had no bearing on and was irrelevant to the holding in *Stewart*.  Further, we note that Vigus's reliance on *Stewart* is misplaced because we held that the witness testimony at issue was not a judicial admission and that, "when determining whether a party has made a judicial admission, the party's testimony must be considered as a whole and be clear and unequivocal."  *Id.* at 570.

[18]     The transcripts of the 2017 hearing, subsequent conferences, and the trial show that the parties engaged in back-and-forth discussions with the trial court regarding the issue of a building code violation that were confusing, ambiguous, and inconclusive. As the Theater's counsel put it during the 2017 hearing,

> I feel like I'm in the Twilight Zone with some of these things . . . . [Plaintiff's counsel and I are] not communicating very well. I think I heard [plaintiff's counsel] say that [the Theater says the ten-inch step] complies with the [local] Building Code, and I think I just said that that's not the case. Our expert doesn't say that because we can't . . . . [The step] is ten inches. *Evidence of negligence*, certainly. We know that, but *not [a] Building Code violation*.

Tr. Vol. 3 at 157 (emphases added). Then, just a few moments later, the Theater's counsel said, "Again, *we don't deny there's a building code violation*." *Id.* at 158 (emphasis added). In sum, at the 2017 hearing, the Theater conceded that the height of the riser was *evidence* of negligence but equivocated on the question of whether or not the riser was a building code violation.

[19]     Some twenty months later, during voir dire, the Theater's counsel responded to a question from a prospective juror and said, "The code was broken. *There will be evidence of a building code violation*." *Id.* at 104 (emphasis added). After voir dire, during a colloquy with the court, the parties attempted to get clarification on the judicial admission as follows:

> [Counsel for Vigus]: *So the jury will be informed that this is a Building Code violation, that the step is . . .*

THE COURT: Right.

[Counsel for Vigus]: The step in question is a Building Code violation?

THE COURT: That the step, *as built*…

[Counsel for the Theater]: Is higher than nine inches which is violative of the code.

*Id.* at 133 (emphases added). And in her opening argument, Vigus declared, "there is no dispute there is a building code violation," an assertion that the Theater immediately disputed in its opening argument, without an objection from Vigus. Tr. Vol. 3 at 137.

[20] The transcript reveals that the parties frequently talked past each other, and there was no clarity on the parameters of the judicial admission under discussion. The parties disagreed whether the Viguses' table was located on a "step" or a "riser," a fact material to the building code violation issue. And Theater's counsel equivocated, saying that the height of the riser was only *evidence* of a building code violation, *was* a building code violation, and *was not* a building code violation. Given these and other ambiguities, we cannot say as a matter of law that the Theater's counsel made a definitive, unequivocal judicial admission of a building code violation. *See, e.g.*, *Harr v. Hayes*, 106 N.E.3d 515, 527 (Ind. Ct. App. 2018) (holding party had not made binding judicial admission where statement, taken in context, contained an ambiguity).

[21]   The trial court concluded that it was not "comfortable saying there's a building code violation." Tr. Vol. 6 at 78. Indeed, considering the Theater's counsel's statements "as a whole," they were neither "clear" nor "unequivocal." *Stewart*, 53 N.E.3d at 570. Thus, we cannot say that the trial court erred, and we hold that the trial court did not abuse its discretion when it revoked its pretrial order finding that the Theater had made a judicial admission on the building code violation.

[22]   In any event, even if we were to assume that the Theater made a judicial admission, it did not affect the manner in which the case was tried or the question the parties asked the jury to decide. Both parties conducted the trial as though the jury would be instructed on the judicial admission, and it was not until the instruction conference that the court actually revoked its order. Thus, the prejudice, if any, would not have occurred until the instruction Vigus wanted was not given.

[23]   In other words, the ultimate question was whether the court would give a final instruction on the Theater's admission that the riser was in violation of the building code. After both parties had rested, during the instruction conference, the court granted the Theater's motion to reconsider its pretrial order finding a judicial admission and revoked the order that had been entered the day before the trial began. The court stated that "the best way" to address the building code issue would be to emphasize that "the structure, as built, does not comply with plans approved by all appropriate government entities at the time because that is not in dispute." Tr. Vol. 7 at 40. Counsel for Vigus replied, "Okay." *Id.*

The court then noted that, "perhaps [in] anticipating" how the court would rule on the Theater's motion to reconsider the judicial admission order, Vigus had tendered the following instruction:

> At the time of Ruth Vigus'[s] injury, there were certain Indiana Building Codes . . . and industry practices that [the Theater] was subject to . . . relat[ing] to the safe construction and maintenance of the building. You are to consider the violation of any Indiana Building Code . . . or industry practice as evidence of negligence[.]

*Id.* at 40-41; Appellant's App. Vol. 9 at 159. The court expressly observed at the instruction conference that Vigus did not request or tender a final jury instruction on the Theater's judicial admission. The court all but invited Vigus to tender such an instruction. She did not.

[24] For the first time on appeal, Vigus contends that the trial court should have instructed the jury that the Theater had admitted that the step violated the applicable building code. Indiana Trial Rule 51(C) provides that, at the close of the evidence, each party may file written requests that the court instruct the jury on the law as set forth in the requests. And, as our Supreme Court has made clear, when, as here, the claimed error is the failure to give an instruction, as distinguished from the giving of an erroneous one, a tendered instruction is necessary to preserve error because, without the substance of an instruction upon which to rule, the trial court has not been given a reasonable opportunity to consider and implement the request. *Scisney v. State*, 701 N.E.2d 847, 848 n.3 (Ind. 1998). In this procedural posture, a party's "failure to . . . tender a

relevant jury instruction" results in waiver. *Bowman v. State*, 51 N.E.3d 1174, 1178-79 (Ind. 2016).

[25] Here, again, the court and the parties discussed the judicial admission issue before the trial, during the trial, and during the instruction conference. As we have noted, the transcript shows that those discussions between the court and counsel, which occurred outside the presence of the jury, were confusing and equivocal. And, again, at no time did Vigus request a jury instruction on the Theater's admission of a building code violation. As *Scisney* directs, Vigus was required to tender an instruction in order to give the trial court an opportunity during the trial to deny or implement the request and for Vigus to preserve the issue for appeal. 701 N.E.2d at 848 n.3. This was necessary even though Vigus may well have believed and anticipated that the court would refuse to give the instruction.[2] Instead, Vigus acquiesced and tendered a different instruction, which the trial court gave. Thus, we cannot consider whether the trial court erred when it did not instruct the jury on the Theater's alleged judicial admission.

[26] In sum, we hold that the trial court did not abuse its discretion when it revoked its pretrial order finding that the Theater had made a judicial admission on the building code violation. Even if the Theater had made a judicial admission, it

---

[2] The day before the instruction conference, during the parties' colloquy with the court regarding the Theater's motion to reconsider the judicial admission order, the court stated, "I won't include an instruction that as built [the step was] a Building Code violation because [I] don't know that." Tr. Vol. 6 at 77. Regardless, Vigus was required to tender the desired instruction in order to preserve the issue for our review.

was incumbent on Vigus to tender a jury instruction on the judicial admission. Vigus did not tender that instruction, and she has not preserved that issue for our review.

## Issue Two: Post-Fall Evidence that the Theater Sought a Variance Instead of Reducing the Riser's Height

[27] Vigus also asserts on appeal that the trial court abused its discretion when it did not admit into evidence communications between the Theater's owners, after Ruth's fall, that they would seek a variance in the riser's height rather than reduce that height. We review the trial court's decision to admit or not admit evidence for an abuse of the court's discretion. *Snow v. State*, 77 N.E.3d 173, 177 (Ind. 2017). "This discretion means that, in many cases, trial judges have options. They can admit *or* exclude evidence, and we won't meddle with that decision on appeal." *Id*.

[28] Vigus's argument on this issue is that the Theater's owners "lied under oath" because, during trial, they testified that they would have taken remedial actions if they had known the riser's height posed a danger, yet, following Ruth's fall, they applied for a building variance rather than reduce the riser's height. Appellant's Br. at 51. Vigus asserts that that evidence was relevant impeachment evidence and, as such, the court erred when it denied the admission of that evidence.

[29]     In a pretrial order,[3] the trial court prohibited the admission of those communications, stating that they did not reveal that the owners "knew the condition of the platform as-built did not comply with potentially applicable building codes" and thus were "not relevant." Appellant's App. Vol. 4 at 98. The court further stated that, under Indiana Evidence Rule 403, even if those communications had "some limited relevance . . . , the probative value of the evidence is substantially outweighed by the danger of confusing the issues at trial as well as misleading the jury" by asking the jury to focus on what was known by the owners "after the fall . . . when the relevant inquiry is what [they] knew at the time of [Ruth's] fall." *Id.*

[30]     The trial court did not abuse its discretion. The purported relevance of those communications aside, Indiana Evidence Rule 403 permits the trial court to exclude "relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: . . . confusing the issues[ or] misleading the jury . . . ." "[T]his balancing is committed to the trial court's discretion." *Snow*, 77 N.E.3d at 179.

[31]     The trial court here concluded that the relevance, if any, of the owners' communications to seek a variance after Ruth's fall would be substantially outweighed by the danger of suggesting to the jury that the owners knew at the time of Ruth's fall of the alleged danger posed by the riser. The court's

---

[3] Vigus sought to admit the evidence at trial, and the court denied the request for the same reasons as in the pretrial order. Vigus objected, and the court permitted her to make an offer of proof.

balancing of those concerns was not error as a matter of law, and we will not usurp the trial court's role of balancing those factors. *See id.* Accordingly, Vigus has not met her burden to show error on this issue.

## Conclusion

[32] We hold that the trial court did not abuse its discretion when it revoked its pretrial order on the judicial admission. Even assuming that the Theater had made a judicial admission that the riser was a building code violation, Vigus has not shown reversible error. In particular, prior to trial, the court asked Vigus to "explain" the building code violation to the jury. Tr. Vol. 3 at 133. Vigus obliged and, in her opening argument, told the jury that, "you'll be instructed that there is a building code violation." *Id.* at 137. But Vigus made no objection when the Theater told the jury in its opening argument that the court would not instruct the jury on the violation. Neither did Vigus object to any of the Theater's evidence on the basis that it violated the court's judicial admission order. In the end, the dispute on the judicial admission became "an instructional issue." *See Bowman*, 51 N.E.3d at 1178. But at the instruction conference, Vigus did not argue she was entitled to such an instruction, and she did not tender an instruction on the judicial admission. *See Scisney*, 701 N.E.2d at 848. Thus, Vigus has not preserved for our review her contention on appeal that the trial court erred when it did not instruct the jury that the Theater had made a judicial admission of a building code violation.

[33]     We also hold that the trial court did not abuse its discretion when it excluded evidence of communications between the Theater's owners, after Ruth's fall, that they would seek a variance in the riser's height rather than reduce that height. And we affirm the judgment for the Theater.

[34]     Affirmed.

Kirsch, J., and Brown, J., concur.